THE SOUTHERN MICHIGAN CEDAR & LUMBER CO. (LIM-ITED) v. DANIEL D. McDONALD, HUGH McDONALD, JOHN W. McGINN ET AL.

*Lumber contract—Multiplicity of suits.*

1. Where several liens are asserted, and each rests on its own facts and none are complicated with the rights of third persons, and the only question in common is the validity of the law under which they are made, they cannot properly be disposed of in one litigation upon a bill in equity that is not a bill of peace or a bill to prevent multi-plicity of actions.

2. A lumberman obtained the right to cut a lot of timber and run it to mill, and at the same time he contracted to deliver it to a certain lumber company. The owner of the timber, however, was to retain his title until it was paid for. The lumberman afterward surren-dered his interest in his contract to the owner. The lumber company had overpaid the former, and on its refusing to advance the neces-sary sum to finish the job, the latter abandoned it and sold the logs to a third person. The river-drivers also claimed liens on the logs for their labor, and several attachments were levied. The lumber company then filed a bill to enjoin any interference with their pos-session. *Held* that the case did not fall within the jurisdiction of equity. The questions raised by the conflicting claims of title were

purely legal, and so with the labor liens, which did not depend upon the rights of the original owner nor on any equities that might exist between him and the company. *Held also* that the owner of the logs was entitled to have his claim for stumpage paid by the company, and if the company had overpaid the original contractor, its loss cannot be charged to the owner, whose conduct in ordering payments by the company to be made to the lumberman did not make him a' principal in the latter's contract.

3. A defense to a bill in equity need not be noticed on appeal if the particular defendant who made it did not appeal.

Appeal from Cheboygan. (Ramsdell, J.) June 4.—June 10.

INJUNCTION bill. Defendants appeal. Reversed.

*Bell & Adams* and *Humphrey & Perkins* for complainant.

*John Atkinson* and *Isaac Marston* for defendants.

COOLEY, C. J. The bill of complaint in this case sets forth :

That on November 17, 1882, the defendants Daniel D. McDonald and Hugh McDonald entered into a contract in writing, a copy[1] of which is given with the bill, whereby

---

[1]This memorandum of agreement made and entered into this 17th day of November, 1882, by and between Daniel D. McDonald, of Cheboygan, Michigan, of the first part, and Hugh McDonald, of the same place, of the second part, witnesseth as follows:

Said first party, for and in consideration of the sum of three dollars per thousand feet, board measure, hereby agree to permit said second party to go onto the following described lands situated in the county of Otsego, State of Michigan, to wit: The E. $\frac{1}{2}$ of S. W. $\frac{1}{4}$ sec. 19; the N. E. $\frac{1}{4}$ of N. W. $\frac{1}{4}$ sec. 20; the S. $\frac{1}{2}$ of N. E. $\frac{1}{4}$, the N. W. $\frac{1}{4}$ of N. E. $\frac{1}{4}$, the S. E. $\frac{1}{4}$, the E. $\frac{1}{2}$ of S. W. $\frac{1}{4}$. and the S. W. $\frac{1}{4}$ of S. W. $\frac{1}{4}$, sec. 29; the N. $\frac{1}{2}$ of N. E. $\frac{1}{4}$, and the N. $\frac{1}{2}$ of N. W. $\frac{1}{4}$, sec. 31, all in town 31 N., of range 1 W., at any time prior to the first day of May, 1884, and to cut and remove all the white pine timber, except such part thereof as will make board timber, now standing and being thereon, and to run and drive the same down the rivers, but not below the locks at McArthur, Smith & Co.'s, mill; until he shall have been paid the stumpage price therefor; said first party reserving the right to determine and direct where and upon which part of said lands said second party shall 'operate first, and also what timber said second party shall cut and shall remove. Said second party, on his part, hereby agrees to purchase, and by these presents does purchase, the said timber upon the lands above described, and to pay said first party therefor at the rate of $3 per thousand feet when and so fast as any part of the logs to be taken from the said lands shall have been run down the rivers, and before delivery to any mill or to any other parties. · And he also agrees to cut and to remove such timber all

Daniel, in consideration of three dollars per thousand feet, agreed to permit Hugh to go upon certain described lands and cut and remove all white pine timber, except such part thereof as would make board timber, and run and drive the same down the rivers, but not below the locks at McArthur, Smith & Co.'s mill, until Daniel had been paid the stumpage price therefor; the logs to be paid for before delivery to any mill or to any other parties, and Daniel retaining the absolute title and ownership until payment.

That on the same day, and after the execution of the above-mentioned contract, Hugh entered into another contract in writing with complainant, whereby he agreed to sell to it all the logs and timber so to be cut by him, and to run, drive, and deliver the same at a place to be designated on the Cheboygan river, above the locks, at the sum of eight dollars and fifty cents per thousand feet, board measure; payment to be made as specified in the contract with him, a copy of which is also given.[1]

---

clean so far as he goes or proceeds with the work. It is agreed and distinctly understood, by and between the parties hereto, that the absolute title and ownership of, in, and to the logs and timber to be taken from said lands shall be, continue, and remain in said first party until he shall have been paid the consideration price for the stumpage as above provided, and that upon said stumpage price being paid as above provided, that thereupon the title therein and thereto shall pass and become fully vested in said second party. The logs to be cut from the above-described lands shall be marked "P," with a marking hammer, by said second party before being put into the water. The quantity of logs taken from the said lands shall be determined by the scale and measurement of the same, by which they shall be sold by said second party, if that shall be practicable; if not, then they shall be measured by some competent scaler.

In witness whereof, the parties hereto have hereunto set their hands the day and year first above written.

DANIEL D. McDONALD.<br>
his<br>
HUGH   X   McDONALD.<br>
mark.

In presence of GEO. W. BELL.

[1]This memorandum of agreement made and entered into this 17th day of November, 1882, by and between Hugh McDonald, of Cheboygan, Michigan, of the first part, and the Southern Michigan Cedar & Lumber Company (Limited), of the second part, witnesseth as follows:

The said first party, for and in consideration of the sum of eight 50-100 (8.50) dollars per thousand feet to be paid by said second party as hereinafter expressed, hereby agrees to go onto the following described lands situate in Otsego county, Michigan, to wit: the E. ¼ of S. W. ¼ sec. 19; the N. E. ¼ of N. W. ¼ sec. 20; the S. ¼ of N. E. ¼, the N. W. ¼ of N. E. ¼,

That the two contracts above mentioned were entered into substantially at one time, and as one transaction, and the effect was that Daniel and Hugh, in concert, were to furnish and deliver the logs to complainant,—Daniel furnishing the standing timber, and Hugh the necessary labor; and Daniel was therefore bound by a clause in complainant's contract with Hugh, whereby complainant was to have a lien upon the logs to cover all advances and payments by complainant under that contract.

That the contracts having been made, Hugh and Daniel, acting in concert, proceeded to put a large quantity of logs into the river, and complainant made payments and advances to Hugh which, on May 16, 1883, had amounted to $3059.73, for which complainant claims a lien on the logs superior to any lien of said Daniel.

That on or about said sixteenth day of May, 1883, some misunderstanding occurred between said Hugh and said Daniel, in consequence of which Hugh surrendered his inter-

the S. E. ¼, the E. ½ of S. W. ¼, and the S. W. ¼ of S. W. ¼, sec. 29; the N. ¼ of N. E. ¼, and the N. ½ of N. W. ¼ sec. 31, all in town 31 N. range 1 W., and to cut, draw, run, drive and deliver to said second party, at the place to be designated by second party in the Cheboygan river and above the locks, all the merchantable white pine timber standing and being upon the above described lands, except such part thereof as will make board timber, and to cut said timber into said logs, and in a good and workmanlike manner, and of proper merchantable lengths. It is understood that said first party is to deliver under the terms of this contract all merchantable butts and tops left and remaining from the making of board timber in said lands—that is, all such butts and tops not less than ten feet in length that will make good merchantable timber to work into shingles—and to so cut at least 600,000 feet and not more than 1,000,000 feet during the present ensuing winter, and deliver the same as aforesaid on or before the 15th day of August, 1883, and the balance to so cut during the winter next ensuing thereafter, and to deliver the same as aforesaid on or before the 15th day of August, 1884; said timber to be cut down to ten inches in diameter at the small end, and no smaller. Said second party, in consideration of the premises, and the delivery of the logs as aforesaid, hereby agrees to purchase from said first party the logs to be taken from the lands aforesaid, and to be cut and delivered as above specified, and to pay him therefor at the rate of $8.50 per thousand feet, board measure, and to pay the same as follows: At the rate of $1.50 per thousand feet when and so fast as the same shall be cut and skidded, and the further sum of $1 per thousand feet when and so fast as drawn and put on the rollways at the river, and the further sum of $2 per thousand feet for the running, driving, and delivering as aforesaid, and to pay the same as shall be necessary during the time of running and driving, provided said second party shall at all times hold back or retain a sufficient part of the said $2 per thousand to insure the delivery as aforesaid, and the balance to be paid when the logs shall have been delivered as above

est in his contract to Daniel, and Daniel assumed its performance and informed complainant of that fact, at the same time requesting complainant not to pay the orders of Hugh except as they should be marked by him for payment; that complainant agreed to this, and afterwards paid Hugh's orders, with Daniel's mark upon them, to the amount of $1144.03.

That complainant, about July 3, 1883, finding it had paid nearly the contract price for the logs, declined to pay any more, and thereupon Daniel declined to run the logs any further; that complainant then put on men to run them; that the logs were mixed in the stream with timber of said Daniel, and complainant expended in running them the sum of $2301.07, which is chargeable to said Hugh and Daniel, making in all $6504.83;

That the logs, when they reached their destination, only amounted to 657,000 feet, or thereabouts, which was very

provided, and in manner following: to pay to D. D. McDonald at the rate of $3 per thousand feet, that being the amount of his claim for stumpage for the timber, and the balance, to wit, at the rate of $1 per thousand feet, to pay to said first party. The logs to be got out under the terms of this agreement are to be marked by said first party before being put into the water, as follows: "P." with a marking hammer. The quantity of logs skidded and drawn to the rollways, upon which payments are to be made at certain rates as above provided, shall be determined by monthly estimates of the same by the parties jointly, and payments to be made according to such estimates, the expense of which is to be borne equally by the parties hereto. And the quantity of logs that shall be delivered shall be determined by a scale and measurement at the place of delivery, by some scaler, to be agreed upon by the parties hereto, which scale and measurement is to be taken and adopted as a basis of settlement of all matters and things under this contract. And it is agreed that if it shall be found by said scale that said second party shall have paid a greater sum on account of this contract than is above provided, or in case a less sum shall have been paid, then in such case it shall be adjusted at the time of delivery, whether it shall amount to a greater or less sum than at the rate of $1 per thousand; the consideration price for the logs being $8.50 per thousand feet, according to a scale to be made as last above provided. Said second party are to furnish chains and boom-sticks for booming said logs at the place of assorting below the rapids in Black river. It is agreed that said second party are to and shall have a lien upon the logs to be taken from the above-described lands, to cover any and all advances, and to secure any and all such advances that said second party may make said first party, or shall pay on account of this contract.

In witness whereof, the parties hereto have hereunto set their hands. the day and year first above written.
                                        his
                        HUGH   X   McDONALD
                                       mark.
            SOUTHERN MICHIGAN CEDAR & LUMBER CO. (LIMITED),.
                        Per F. S. PACKARD, Manager.

much less than the complainant had been told by said Hugh when he was obtaining advances, so that complainant has paid about $1000 more than the contract price for the logs.

That Daniel has made a bill of sale of the logs to John W. McGinn, and that said Daniel, Hugh and John have combined and conspired to cheat and defraud complainant out of the logs, and of the moneys paid for them.

That William M. McDonald, and sixteen other persons named, claim to have labor liens on the logs, for different sums of money, for labor in cutting, running, hauling and driving the logs, and some of them have levied attachments on the logs, and proceeded to judgment and execution, and William Harrington, sheriff of the county of Cheboygan, who holds said executions, threatens to sell said logs thereon. The liens are alleged to be void, and the law under which they are claimed is alleged to be unconstitutional.

The bill makes Daniel and Hugh McDonald, McGinn, Harrington and all the parties claiming liens, defendants, and prays that " the said defendants may come to a just and fair account touching the amounts paid by your orators aforesaid and various other matters herein set forth ; and that by the writ of injunction to be issued out of and under the seal of this honorable court, and by the final decree of this court, the said defendants may be restrained perpetually from bringing any suit or suits at law to remove from your orators the possession of said logs, and from bringing any suits at law to enforce any of said pretended liens, and from in any way whatsoever interfering with your orators in their possession and use of said logs, and removing them to their mill or any other place, and disposing of the same as they see fit; and that, by the final decree of this honorable court, all of such pretended liens, judgments and executions may be set aside as against your orators and as against said logs, and your orators' title to said logs, free of all liens, may be declared and established ; and that your orators may have such other and such further relief in the premises as shall be agreeable to equity and good conscience."

The defendants who claimed labor liens appear to have

answered in the case; but as they have not appealed from the decree, which was in favor of complainant as against all of the defendants, their defense requires no notice.    The only defendants who have appealed are Daniel McDonald and McGinn.    Their answer, while admitting the two contracts, denies that they had any connection which made Daniel Mc-Donald a party to the contract with complainant; denies that Daniel McDonald ever took upon himself the perform-ance of the last-mentioned contract, or that he ever gave com-plainant to understand he had done so; denies that he has received from Hugh the payment for the timber, or any par-thereof, or that Daniel has ever waived any right thereto.

The case was heard on pleadings and proofs.    Defendants insisted that the case was one for a court of law, but this view was not sustained.    We think it should have been.

Daniel McDonald claimed the logs by virtue of having the legal title as security for the payment of the sum to be paid to him as stumpage.    McGinn claimed under him, and stood in the same right.    The question of this title was purely legal, and we do not discover in the case any embarrassment that could possibly attend its trial and determination in a court of law, unless the existence of the labor liens could create such embarrassment.    But the labor liens could give no jurisdic-tion to a court of equity.    These also, if valid, were legal claims, and they were not dependent upon the rights of Daniel McDonald, or upon any equities that might exist as between him and the complainant.  Their great number, under such circumstances, instead of being a reason in support of equitable interference, was a reason against it; for each as-serted lien rested upon its own facts, and the only matter in which the claimants had a common interest was the question of the validity of the.lien law ; and as to this, Daniel and Hugh McDonald and McGinn were not concerned with them. This suit, therefore, is an attempt to bring into a court of equity a large number of legal controversies, which rest neither upon the same states of fact nor the same questions of law. It could not, therefore, diminish either the number of con-troversies or the number of issues to be tried; and it was

neither a bill of peace, nor a proper bill to prevent multiplicity of actions.

But, as has been stated, the cases of labor liens are not before us, and the printed record does not inform us on what issues they were disposed of. We have reason to suppose, however, that proofs were not gone into on those claims. As Daniel McDonald and McGinn did not demur, except by demurrer clause in their answer, we have examined the evidence, and shall now dispose of the case upon the merits.

We find in the record no evidence which puts upon Daniel McDonald responsibility for the contract of Hugh with complainant. That contract was made with Daniel's contract in view, but the two were in no way connected, except as all parties understood that the logs were to be had under the second contract only on performing the first. Hugh's failure to perform on his part has created all the difficulty that the parties have met with; but it is a failure which Daniel had never undertaken to be responsible for.

The complainant has produced some strong evidence that Daniel said, in May, 1883, that he had taken the performance of Hugh's contract with complainant upon his own hands. This is explicitly denied by Daniel, who testifies that he never assumed to take charge of the drive, and never did do so. Whether he did or not, we do not think is material in this case. We find no evidence of any payments made to him for which he can now be called to account, and none that he ever was satisfied for his claim for stumpage. That claim, therefore, he is entitled to have paid by the party that has taken the logs which were held by him in security. If complainant overpaid Hugh for the labor done by him, the loss is a misfortune which cannot be charged to Daniel. His making of orders for payment to Hugh appears in the evidence rather as a friendly act on his part to save further loss than as an assumption of responsibility; and it certainly did not indicate any understanding on his part that he had become principal in the contract, but rather the contrary.

Daniel McDonald, then, is entitled to his stumpage, to be diminished by any just claim the complainant may have against

him.   Complainant has a claim to a small amount, and it also
claims that labor and expense were incurred on the timber of
Daniel, which should be paid for by him.   As to these mat-
ters, the complainant may have a reference to a commissioner.

The decree should be reversed as to the defendants who
appealed, and the record remanded for further proceedings.
The two defendants who appealed will recover costs of this
Court, and the costs below will abide the result.

SHERWOOD and CHAMPLIN, JJ. concurred.

CAMPBELL, J.   I am not satisfied that there is any error in
the decree.