CASE 59—PETITION EQUITY—NOVEMBER 11.

# Kenton Insurance Co. v. Bowman, &c.

APPEAL FROM KENTON CIRCUIT COURT.

1. CORPORATIONS—LIEN ON STOCK.—Where the charter of a corporation provides that stock may be transferred on the books of the company, but that no transfer shall be made by any stockholder indebted to the company until his debt is paid or secured, the company has a lien on the stock, which is a legal one, and can not be defeated by the transfer of the stock except in the manner pointed out in the charter.

2. A CORPORATION DOES NOT WAIVE ITS LIEN ON STOCK by taking a mortgage on other property to secure the indebtedness, unless it clearly appears that there was an intention to waive the lien.

3. AUTHORITY OF OFFICERS OF CORPORATION.—The executive officer of a corporation, whose duty it is to transact its general business with third persons, binds the company by his acts done within the scope of the general usage, practice and course of business of the corporation.

In this case, the officer of a corporation, who had no power to transact the general business of the company with third persons, did not

bind the company by his certificate to the effect that the company had no lien on certain shares of stock.

J. F. & C. H. FISK FOR APPELLANT.

1. All the banks and assignees had notice of the provisions of appellant's charter. The provisions of the charter of a corporation are *per se* notice to all the world, and a by-law authorized by the charter has the same effect. (Transfer of Stock, Lowell, sections 165, 167, 168, 171, 172 and 176.)

2. The provisions of appellant's charter are sufficient to put all persons upon inquiry as to how far the Board of Directors has restricted the transfer of stock. (Wade on the Law of Notice, sec. 333, p. 144; Hill v. Simpson, 7 Ves. Jr., 152; Lowell on Transfer of Stock, sections 168 and 171.)

3. The lien of the appellant can be waived only by an *express* declaration of the Board of Directors; a waiver of the lien can not be inferred by any action of the company, when looking over its securities, and not having in view the question of waiving its lien. Nor can it be inferred from any report the company may make, as required by law, to the Insurance Bureau, the question of waiving its stock lien not being before the corporation. (Lowell on Transfer of Stock, sec. 181; Moore v. Bank of Commerce, 52 Mo., 377.)

4. The representations of an agent of the corporation, upon the faith of which the assignees of stock take the assignment of the stock, paying money therefor, will not bind the corporation unless the agent was appointed by the Board for that express purpose. The authority of the agent to make the representations can not be implied from his acting in a general capacity, such as book-keeper, for the corporation. (Potter's Law of Corporations, vol. 1, secs. 125, 128, 131, and note to 131, 133, 134, 136, 137, 143, 144, and note 11, and 153; Adrians v. Roone, 52 Barb., 399; Bank of Ky. v. Schuylkill Bank, 1 Pars. Sel. Cases, 180; Morrow v. Jones *et al.*, 12 American Law Record, 533; Brennen & Co. v. Loving & Co.; Louisville City National Bank v. Loving, 6 Ky. Law Rep., 828; Commonwealth v. Reading Savings Bank, The Reporter, vol. 18, No. 21, p. 655; Potter on Corporations, vol. 1, sec. 269, p. 341; 5 Barb., 615; 29 Pa. St., 146.)

5. The lien of appellant allowed by the charter was, by the Board, carried into the stock certificates. (Bishop v. Globe Co., 135 Mass., 132; Young v. Vough, 8 C. E. Green, 325; Chambersburg Ins. Co. v. Smith, 11 Pa. St., 120; Moores v. Citizens' National Bank of Piqua, 111 U. S., 156, 164, &c.)

6. The lien is not waived by taking additional security. (Lowell on Transfer of Stock, sec. 181; Union Bank v. Laird, 2 Wheaton, 390.)

7. To keep the lien alive, it is not necessary to make any attempt to collect the debt, any more than in the case of a pledge or a mortgage. (Low-

ell, sec. 176; First National Bank of Hartford v. Hartford Ins. Co., 45 Conn , 22; *In re* Biglow, 1 N. B. R., 667.)

8. Where the act of the officer is *ultra vires,* the corporation is not bound or estopped.    (Pearce v. R. R. Co., 21 How., 441; Marsh v. Fulton County, 10 Wall., 676; Thomas v. Howard, 12 Wall., 349.)

So although within the corporate powers, yet if made by an agent not duly authorized to do the act, the corporation is not bound or estopped thereby.    (United States v. City Bank of Columbus, 21 How., 356.)

9. Authority to issue and transfer stock does not confer authority to waive a lien thereon.    Only the Board of Directors has power to do the latter.    (Pollard v. Vinton, 105 U. S., pp. 7-12.)

10. A provision such as in the 10th section of appellant's charter, creates a *lien* upon the stock in favor of the bank for the debts of the stockholder.    (Arnold v. Suffolk Bank, 27 Barb., 424.)

11. The fact that Brooks had, in one or two other instances, issued statements similar to those in dispute, is not sufficient to show his authority or to estop the company.    (Moores v. Citizens' Bank of Piqua, 11 U. S. Rep.)

12. Where a debt of the stockholder is overdue and unpaid, even a majority of the Directors can not allow a transfer without the payment of the debt.    (Conant, Ellis & Co., &c., v. Rufus Reed, &c., 1 Ohio St. Rep., 298.)

13. The acts of Brooks did not go on the record, and, therefore, can not work an estoppel.    (American Decisions, vol. 8, 718; *Ibid.,* vol. 14, 628 to 632.)

14. The principal is not bound by the acts of a *particular* agent, where he has exceeded his power.    (*Commonwealth* v. Hawkins, &c., 7 Ky. Law Rep., 242.)

15. Where the charter authorizes a corporation to make by-laws on a particular subject, as, for instance, restrictions as to transfer of stock, they are as binding on members and others acquainted with their method of doing business as any *public* law of the State.    (Angell & Ames on Corporations, sec. 321; Cummings v. Webster, 43 Me., 192.)

Upon all the foregoing points, see Brent v. Bank of Washington, 10 Pet., 610-616; Merchants' Bank v. State Bank, 10 Wall., 604.

16. The testimony of V. Shinkle, as to what occurred when the mortgage was executed, is incompetent, because it is an attempt to vary, alter and contradict a written instrument.    (Bank of United States v. Dunn, 6 Peters, 57; Hoare *et al.* v. Graham *et al.,* 3 Camp., 57; Renner v. Bank of Columbia, 9 Wheat., 587.)

17. The descendants of Mrs. Shinkle can not plead her coverture as a defense to the note executed by her.    Such a plea, like infancy, is a personal privilege.

18. The wife can mortgage her general property jointly with her husband. (Smith, &c., v. Wilson, 2 Met., 235; Johnston v. Ferguson, 2 Met., 503; Sharpe's Adm'rs v. Procter's Adm'rs, 5 Bush, 396; Hobson, &c., v. Hobson's Ex'r, 8 Bush, 665.)

WM. GOEBEL FOR APPELLEE, LUCY BOWMAN.

1. Mrs. Shinkle had, with reference to the mortgaged property, the rights of a surety.

  Where a married woman mortgages her property for her husband's debt, it occupies the position of a surety or guarantor, and will be discharged by any thing that would discharge a surety or guarantor who was personally liable.    (Brandt on Suretyship and Guaranty, section 22; John v. Reardon, 11 Md., 465; Denison v. Gibson, 24 Mich., 187; Agnew v. Merritt, 10 Minn., 308; Wallace v. Hudson, 87 Texas, 456; Wolf v. Banning, 3 Minn., 202; Spear v. Ward, 20 Cal., 659; Neincewiez v. Gahn, 3 Paige, 614; Hamford, &c., Banking Co. v. Ball, 4 De Gex, *Fch.* and J., 310; Gahn v. Neincewiez, 11 Wend., 312; Knight v. Whitehead, 26 Miss., 245; Vartie v. Underwood, 18 Barb., 561; Smith v. Townsend, 25 N. Y., 479; Bank of Albion v. Burns, 46 N. Y., 170; Coats v. McKee, 26 Ind., 223; Wilcox v. Todd, 64 Mo., 388; Purvis v. Cantsaphan, 73 N. C., 575.)

2. The appellant having a lien upon stock, which it has released without the consent of the owners of the mortgaged property, who occupy the position of sureties personally bound, the mortgaged property is exonerated to the extent of the full value of the stock owned by Shinkle at the time the mortgage was executed, or thereafter acquired by him. (Brandt on Suretyship and Guaranty, section 370, and authorities there cited.)

3. The testimony of Shinkle as to the representations made by Beall at the time the mortgage was executed, was competent.    He did not testify to any thing that was said or that occurred between himself and his wife.    (Sharp v. Procter, 5 Bush, 396.)

4. The appellant must make good the representations of its agent, Beall, which induced Mrs. Shinkle to execute the mortgage.    (Wharton on Agency, sec. 158.)

5. If the representations of Beall were untrue, and induced Mrs. Shinkle to execute the mortgage, the mortgaged property is exonerated.  (Brandt on Suretyship and Guaranty, sec. 348.)

O'HARA & BRYAN FOR APPELLEE, FIRST NATIONAL BANK.

I. The appellant is estopped to claim a lien upon the stock superior to the Bank, because:

1. It has waived its lien by taking a mortgage upon real estate to secure its debt.

2. A committee appointed by appellant, under its by-laws, for the express purpose of investigating the condition of its loans, and character and sufficiency of security, did, from time to time, report this debt due the company by V. Shinkle to be secured by said mortgage and not otherwise, and that the security was ample, which reports were concurred in by the President and Board of Directors.

3. In violation of its charter, appellant paid to Shinkle semi-annually his dividends.

4. Before receiving or accepting the stock as security, the bank was notified by the insurance company that it had no claim against the stock.

II. Waiver of a lien, by taking other security, is a question of intention. (Story's Equity, 470, &c.; Hurly v. Stemmons, 4 B. M., 132.)

The intention of the insurance company to waive its lien is manifest.

RICHARD P. ERNST FOR APPELLEE NORTHERN BANK.

1. Acts establishing private corporations must be construed strictly as against the corporation, but liberally in favor of the public. (Maddox v. Graham, 2 Met., 72; State of Ohio v. Cincinnati Gas Co., 18 O. S., 296.)

2. Section 4 of appellant's charter was intended to confer simply a power to place such safeguards about the transfer of stock as would protect both the company and its stockholders, and it was not intended to confer upon appellant the power to create a lien or claim on its stock in its own favor. At common law, corporations had no such power, and if they claim such, it must be by reason of special authority given them. (Driscoll v. West Man'g Co., 59 N. Y.; Taylor on Private Corporations, sec. 600; Lowell on Transfer of Stock, sec. 161.)

3. If appellant has a lien, it is by virtue of section 10 of its charter, which can not be construed to give a lien where a stockholder is not indebted to the company, or where, if indebted, that indebtedness is satisfactorily secured.

The evidence makes it manifest that appellant deemed its mortgage security ample and satisfactory.

4. There is no implied power in a corporation to pass a by-law which creates a lien on its shares. (Taylor on Private Corporations, section 601, citing Mobile Ins. Co., 49 Ala., 558; Carroll v. Mullanphy Bank, 8 Mo. App., 249; Driscoll v. West Man'g Co., 59 N. Y., 96; Bank of Attica v. Man'rs Bank, 20 N. Y., 505; Brynn v. Carter, 22 La. Ann., 98; People v. Crockett, 9 Cal., 112; Moore v. Bank of Commerce, 52 Mo., 377; Farmers' Bank v. Wasson, 48 Iowa, 336; Lowell on Transfer of Stock, sec. 171.)

5. Brooks was intrusted with the performance of manifold duties, and more than any one else understood the management of appellant's affairs. Those interested, therefore, had the right to rely upon him for infor-

Kenton Insurance Co. v. Bowman, &c.

mation as to any claim of lien which appellant might have on its stock; and his knowledge of the use that was to be made of the certifi- cate that was issued to the bank was the knowledge of the Board of Directors.  (Conn. Mut. Life Ins. Co. v. Scott, 81 Ky., 549.)

6. Though an officer or agent of a corporation may not have been empow- ered, by a vote or resolution of the Board of Directors or stockholders, to do certain acts, yet when such officer or agent has done such acts repeatedly, and under such circumstances that the Board of Directors should have taken notice of them, the law will presume the authority on the part of the officer, and estop the corporation from setting up a want of authority.  (Martin v. Webb, 110 U. S., 7.)

7. The authority of the agent to waive the lien of the corporation may be either express or implied.  (National Bank v. Watsontown Bank, 105 U. S., 220.)

GEO. R. McKEE OF COUNSEL FOR NORTHERN BANK.

COLLINS & FINLEY FOR SHINKLE'S ASSIGNEES, APPELLEES.

1. Appellant's charter gives only a right to a lien, which, in order to be asserted against intervening equities, must be relied upon and looked to as a security for the debt.  (Cecil National Bank v. Watsontown Bank, 105 U. S., 217.)

2. If appellant had a lien under its charter, it was waived by taking mort- gage security to the satisfaction of the President and Board of Direct- ors.  (Fitzhugh v. Bank of Shepherdsville et al., 1 J. J. M., 125-6.)

3. Appellant is estopped to assert a lien by reason of the written and verbal statements of its agent, on the faith of which the stock was pledged.    (Bank of America v. McNeil, 10 Bush, 54; Cecil National Bank v. Watsontown Bank, 105 U. S., 217.)

4. At common law, there is no lien in favor of a corporation on its stock to secure a debt from the stockholder.  (Dana v. Braun, 1 J. J. M., 306.)

A. C. ELLIS FOR SHINKLE'S CHILDREN, APPELLEES.

1. The mortgage executed by Mrs. Shinkle was only a security for the payment of her husband's debt. and if appellant at any time after the mortgage was executed, voluntarily surrendered any of its liens, by which Mrs. Shinkle's risk as such security was increased, her land is, by operation of law, released from the effect of the mortgage.  (Story on Contracts. vol. 2, p. 368, sec. 1132; DeColyar on Guaranties, &c., p. 438; Brandt on Suretyship, &c., sec. 386.)

2. Any misrepresentation or any concealment of a material fact by the creditor, by which a surety is induced to become bound, will annul the contract.

   In this case, appellant's agent represented to Mrs. Shinkle that the mortgage was a mere matter of form, and that appellant was already

amply secured.    If those representations were false, the mortgaged
property is exonerated.

3. Shinkle, the husband of the mortgagor, was a competent witness to
prove that such representations were made to his wife, his testimony
being really against his legal interest.    (Sharp v. Procter, 5 Bush,
396.)

T. F. HALLAM for german national bank.

Brief not in record.

JUDGE BENNETT delivered the opinion of the court.

On the 21st of October, 1874, V. Shinkle and his wife,
Lydia A. Shinkle, executed to the appellant a mort-
gage on a tract of land belonging to the wife, Lydia A.
Shinkle, to secure a note executed by them to appellant
for the sum of $24,886, and payable three years after
date, with seven per cent. interest, payable semi-annu-
ally.

V. Shinkle was president of the Kenton Insurance
Company, the appellant, from the time of its organiza-
tion, under its charter, by an act of the Legislature of
this State approved the 13th of February, 1867, until
some time in 1884, and owned a large amount of its
stock at the time said note and mortgage were exe-
cuted.

On the 15th of August, 1883, V. Shinkle executed to
the appellees, W. M. Fenley and R. T. Miller, a deed
of assignment of all of his property for the benefit of
his creditors, he having become insolvent.    In 1883, but
prior to his deed of assignment, V. Shinkle pledged to
the First National Bank a certificate for some shares of
stock which he owned in the Kenton Insurance Com-
pany, the appellant, to secure a loan or loans of money
made by the bank to him.    In 1880 and 1883, but be-
fore the deed of assignment, V. Shinkle pledged to the

Northern Bank certificates for some other shares of stock which he owned in the Kenton Insurance Company, to secure loans of money made by that bank to him. He also pledged to the German National Bank of Covington a certificate for some shares of stock which he owned in the Kenton Insurance Company, to secure a loan or loans made by that bank to him.

On the 7th of September, 1883, the appellant brought suit in the Kenton Chancery Court against Lucy M. Bowman, her husband, and others, the children of V. and Lydia A. Shinkle, and also the assignees of V. Shinkle, to enforce its mortgage lien on said land, and have it sold to pay the remainder of said debt, etc. On the 1st of October, 1883, the assignees of V. Shinkle brought suit in the Kenton Chancery Court to sell the lands assigned to them, for the purpose of paying the debts of V. Shinkle, etc.

The appellant, by an amended petition, claimed a lien on the stock which V. Shinkle owned in its company, including that pledged to the bank, to secure said debt of $24,886, or the remainder of it, in addition to its mortgage lien upon said land.

The banks above mentioned, by their separate answers, contest the right of appellant to a lien on the stock pledged to them upon the grounds—

1st. That appellant, under its charter, has no lien upon the stock of V. Shinkle to secure his indebtedness to it.

2d. That if appellant ever had a lien, under its charter, to secure the said indebtedness, it waived said lien by taking a mortgage on said land, which they contend was ample security to secure the payment of said indebtedness.

3d. That they loaned V. Shinkle said sums of money, and received the stock as a pledge for the payment of it, upon the verbal and written assurances of appellant that it had no lien or claim upon said stock. The assignees also insist that appellant has no lien upon any of the stock owned by V. Shinkle in its company.

The children of V. and Lydia A. Shinkle, by their answer, insist that appellant's charter gave it a lien upon the stock of V. Shinkle, and that said mortgage was executed in view of that lien, and with the understanding that the stock was ample security for the payment of said debt, and that the mortgage was required as a mere matter of form to satisfy the demands of the Insurance Bureau of the State; and that, therefore, said stock should be first applied to the payment of the mortgage debt, etc.

The first question is, does the appellant's charter give it a lien on the shares of stock owned by the stockholders in their own right, to secure the payment of their indebtedness to the company.

The 10th section of appellant's charter provides: "That the stock of this institution may be assigned and transferred on the books of the company in person or by power of attorney, but no stockholder indebted to the company shall be permitted to make any transfer or receive any dividend until such debt is paid, or secured to the satisfaction of the President and Board of Directors."

The Supreme Court of the United States, in the case of Union Bank v. Laird, 2 Wheaton, 396, construed the 11th section of an act of Congress, passed the 18th of February, 1811, incorporating the "Union Bank,"

which section provided "that the shares of the capital stock, at any time owned by any individual stockholder, shall be transferable only on the books of the bank, according to such rules as may, conformably to law, be established in that behalf, by the president and directors; but all debts actually due and payable to the bank    *    *    *    by a stockholder requesting a transfer, must be satisfied before such transfer shall be made, unless the president and directors shall direct to the contrary."    "The certificate issued to Patton for fifty shares held by him, declared 'the shares to be transferable at said bank by the said Patton or his attorney on surrendering this certificate.'"

The court said: "No person, therefore, can acquire a legal title to any shares, except under a regular transfer according to the rules of the bank; and if any person takes an equitable assignment, it must be subject to the rights of the bank, under the act of incorporation, of which he is bound to take notice. The president and directors of the bank expressly deny that they have waived, or intended to waive, the right of the bank to a lien for debts due to the bank by the form of the certificate, and that they ever directed any transfer to be made to Patton which should stipulate to the contrary. Under such circumstances, it must be held that the shares are responsible for the debts due the bank."

In the case of the Mechanics' Bank, &c., v. Seton, &c., 1 Peters, 299, the 21st section of the act chartering the bank provided "that the shares of the capital stock shall be transferable at any time, according to such rules as may be established by the president and directors; but no stock shall be transferred, the holder

thereof being indebted to the bank, until such debt be satisfied, except the president and directors otherwise order it." The court said: "This provision was intended to put into the hands of the bank additional security for debts due from the stockholders."

In the case of Brent v. The Bank of Washington, 10 Peters, 614, the court construed a provision of the bank's charter, which was similar to the 11th provision quoted in the Union Bank v. Laird, *supra;* the court said: "As Mr. Brent owed the debts now claimed by the bank on the notes due and protested before his death, this would be a complete answer to a suit at law by his executors for not permitting a transfer; and the same objection would be fatal to a suit in their name for the use of the United States. The defense is a legal one; the case provided for by the charter and by law had happened; the bank had a perfect right to hold on to the stock." Again, on page 615, the court said: "Two notes were due and protested; the legal lien of the bank for their payment was complete." Again, on the same page, the court said, in reference to the note not due: "Though the charter has not made the note a lien on the stock till the note is protested, so as to give the bank both a legal and equitable right to refuse the transfer till it is paid, yet it has given them the power to prevent a transfer, unless on their books, by such rules as they may prescribe, which gives them power to prevent the legal title from passing to a purchaser."

In the case of National Bank v. Watsontown Bank, 15 Otto (105 U. S.), 220, the court construed section 10, article 10, of an act regulating banks, which reads * * * "but no stockholder indebted to the bank

for a debt actually due and unpaid, shall be authorized to make a transfer or receive a dividend until such debt is discharged, or security to the satisfaction of the directors given for the same." The court said: "The title, however, was unquestionably subject to the lien given by its charter to the Watsontown Bank."

The court, in this case, decides that the transfer of the certificate of stock passed the legal title to the stock to the transferee, subject, however, to the lien of the bank upon it for the payment of any debt the transferor might owe the bank at the time, etc.

In the case of Union Bank v. Laird, the court held that the transferee of the certificate of stock acquired only an equitable title to the stock until the transfer was entered upon the books of bank. Both cases, however, as well as the other cases referred to, agree that the lien of the banks, by virtue of the provisions of their charters above quoted, existed, not merely as an implied, but as a legal lien upon the shares of the stockholders, who were indebted to the banks, for the payment of such debts.

According to these cases, we conclude that, by the 10th section of appellant's charter, it has a lien upon the stock held in its company by the stockholders thereof to secure the payment of any debt that such stockholder may owe it, and that such lien is a legal one, and can not be defeated by the simple transfer of the stock, except in the manner pointed out by the section, *supra*, and the by-laws of the company.

The second contention is, that the appellant waived its lien upon the stock of V. Shinkle by taking the mortgage on Mrs. Shinkle's farm to secure his indebt-

edness to it, which farm secured the payment of the indebtedness, as is contended, to the satisfaction of the appellant.

In the case of Union Bank v. Laird the court said: "The next inquiry is, whether the bank has done any thing to deprive itself of the lien upon the shares for the acceptance of Patton since the same became due, and to let in the equitable title of the plaintiff. The acceptance is not yet paid, and nothing has been done by the bank affecting its rights, unless the subsequent taking of security for the acceptance from Smith can be construed so to do. Certainly the bank had the right to require additional security from the indorser of the acceptance, and it can not be perceived upon what principles this can be construed an extinguishment of its lien upon the shares of the acceptor. A creditor may lawfully take and hold several securities for the same debt from his joint debtors, and he can not be compellable to yield up either until his debt is paid. And in this case there is no want of equity in holding the shares of Patton, who is the immediate debtor to the bank, liable in the first instance, rather than resorting to the security of an indorser, who is only liable upon the default of the acceptor."

The proof in this case shows that Mrs. Shinkle was induced to execute the mortgage upon her land to the appellant upon the assurance of Mr. Beal, its secretary and cashier, that the stock held by V. Shinkle in appellant's company was sufficient to secure the payment of his indebtedness to it; therefore, she would run no risk in executing the mortgage. The proof also shows that, from the time said mortgage was executed until after

the assignment of V. Shinkle to his assignees, the dividends from time to time declared on said stock were applied to the payment of the interest on said mortgage debt. It is true that the appellant, in making its reports to the Insurance Bureau of the State, always reported the land mortgaged to be worth largely more than said debt. Also, the appellant's special committee appointed for the purpose always reported that said debt was amply secured by said mortgage. But how these facts can be construed as a waiver of appellant's lien upon the stock, we are unable to perceive.

The appellant's lien upon V. Shinkle's stock as a security for the payment of his indebtedness to it, was a legal lien, and of as high dignity as its lien acquired by the execution of the mortgage for the security of the debt. Having the legal right to the one lien and the contract right to the other, it had the right to look to both as a security for the payment of the indebtedness. The presumption is that it did look to both. The fact that it regarded the mortgage security as equivalent in value to the debt, does not destroy that presumption. In order to destroy that presumption, some affirmative fact should appear showing, expressly or by clear implication, that appellant intended, by taking the mortgage security, to waive its lien on the stock. Such fact does not appear. On the contrary, the appellant held out, as an inducement to the execution of the mortgage, that it held a lien on said stock, which was sufficient security for the payment of said debt. Also, it, from year to year, applied the dividends arising from said stock to the payment of the interest on said debt.

For the foregoing reasons, we conclude that appellant did not waive its lien on said stock by taking the mortgage security.

The third contention of the banks is, that V. Shinkle transferred some of the certificates of stock held by him in the appellant's company as collateral security of the several sums borrowed from them, and that appellant waived its lien on said stock so pledged to them, and in consideration of the pledge of the stock and waiver of lien on it by appellant, they loaned V. Shinkle said sums of money.

The banks put in evidence the written certificates and verbal statements of T. E. O. Brooks, assistant secretary of appellant's company, made to them, as proof of such waiver of appellant's lien on said stock. One of the certificates is as follows:

"COVINGTON, March 24, 1881.

" *To whom it may concern :*

" This is to certify that V. Shinkle is the owner and proprietor of certificate No. 150, for twenty-five shares paid up capital stock of the Kenton Insurance Company, amounting to $1,250, and this company has no claims against the same.

"KENTON INSURANCE COMPANY,

"T. E. O. BROOKS,

" *Assistant Secretary.* "

This certificate was delivered to one of the banks, and a similar certificate was delivered to one of the other banks, and similar verbal statements were made to all of them in reference to the certificates for the shares of stock held by the banks as collateral security for the loans to V. Shinkle.

Whether Mr. Brooks, as an officer in appellant's company, had the authority to bind it by these statements, may be elucidated by a reference to the authorities bearing upon the subject.

This court, in the case of Bank of America v. McNiel, 10 Bush, 59, says: "By section 24 of the by-laws of this bank, the cashier is made a member of the exchange committee. This committee is charged with the duty of buying and selling bills, notes, and other evidence of debts, and of discounting paper offered to the bank for discount. Nothing to the contrary being shown, it must be presumed that the cashier was present when the two notes of Atwood were passed upon. He was then acting for the bank in the discharge of his official duties. * * * It was his duty to have disclosed to the members of the committee the facts known to him."

In the case of the Connecticut Mutual Life Insurance Co. v. Scott, &c , 81 Ky., 540, this court said: " Information coming to the officers elected by the board, and entrusted with the daily transaction of the business of the company and those who deal with it, and which is necessary or naturally connected with its performance, and which such officers are in duty bound to disclose to the board, must be treated as the information of the board, and binding upon it. * * * Notice, therefore, to such agents, in the transactions *in which they are employed*, is notice to the company employing them."

In the case of the National Bank v. Watsontown Bank, *supra*, the court said: "The clause which denies to the stockholder the privilege of making a transfer of his stock, while a debtor, until his debt is discharged,

or secured to the satisfaction of the directors, does not forbid the bank to waive its rights, or prevent the cashier from acting for the directors, by virtue of an express or implied authority. In this, as in other matters of ordinary business within the general scope of his official duty, he is their appropriate representative."

From the foregoing authorities, and others not necessary to cite, the rule seems to be that the executive officer of a corporation, whose duty it is to transact its general business with third persons, is impliedly held out to the world as having authority to act according to the general usage, practice and course of business of such corporation; and all acts done by him within the scope of such usage, practice and course of business, bind the corporation as to third persons, who transact business with him on the faith of his official character, although it may turn out that he acted without the knowledge or consent of the corporation, and against its interest, and in violation of his duty to it.

The evidence in this case shows that Mr. Brooks was not a member of the board of directors, nor was it his official duty to act with them at their meetings, nor to advise them as to the condition of the company, or as to its business transactions. Nor did he have power to transact the general business of the company with third persons. He says it was his duty to keep the books of the company, and handle its moneys and valuables, and do such other work as was required of him. He does not recollect to have given certificates similar to those given to the banks but to one or two persons. He claims to have inferred his authority to give such cer-

tificates from the habit of the former secretary, Mr. Beal, to give such certificates. It turns out, however, that he can recollect only a few instances in which Mr. Beal gave such certificates; and he had no authority to do so, nor did Mr. Brooks. It is also clearly shown that the company, or its board of directors, knew noth ing of the acts of either Beal or Brooks in this regard, and did not approve or ratify such acts.

We conclude, therefore, that Mr. Brooks had no authority, either express or implied, by virtue of the official position he held in appellant's company, to give the certificates mentioned ; nor were his acts in that regard known to the company or ratified by it. Nor were his general official duties such as to justify appellees' belief that in giving said certificates, or in making the verbal statements, he was acting within the scope of his authority. Nor were the appellees justified in believing that, by reason of the position which Brooks actually held in the company, giving his authority incidental thereto the most liberal construction, he had any authority, either express or implied, to give such certificates.

Besides, the certificates of stock transferred to the banks by V. Shinkle say the stock "is subject to all claims of the company against the owner."

The appellees, the banks, therefore, had notice of the appellant's claim upon said stock to secure any debt that the owner might owe it at the time of the transfer. They, presumptively at least, knew that appellant, by the terms of its charter, had a lien on the stock of V. Shinkle for any debt that he might owe it. It was incumbent on them, therefore, to apply to the proper

authority to ascertain whether said stock was unencumbered, and not confine their inquiry to one whose official duties in the institution were, at most, merely clerical. Besides, the officers of the banks who transacted this business were, or had been at some time, stockholders or officers in appellant's company, and doubtless knew—certainly should have known—that Brooks had no authority to issue such certificates.

After giving the entire record a careful consideration, we conclude that the appellant has a superior lien on the stock in question, except that portion hereinafter mentioned, and that said stock, together with all of the stock owned by V. Shinkle, should be sold upon such terms as the lower court may prescribe, and the proceeds thereof applied to the payment of said mortgage debt of $24,886; and after said credit is given, so much of the said land mortgaged as may be sufficient for that purpose should be sold to satisfy the remainder, if any, of said debt; said debt should be credited also with the value of the stock redeemed by the assignees of V. Shinkle from the Northern Bank. That the said assignees should be allowed to retain out of the proceeds of said stock the money and interest thereon, which they paid to the Northern Bank for the redemption of said stock, and the balance of the proceeds arising from the sale of said stock should be paid to the appellant. The Northern Bank should not be held liable to the appellant on account of the said stock transferred to the assignees of V. Shinkle.

The judgment is reversed, and the cause remanded, with directions to the lower court to proceed consistently with this opinion.