## ALDINE MANUFACTURING CO. *v.* PHILLIPS.

1. LIENS—INCIDENTS.
    A lien implies, primarily, simply a right of detention of property until the claim of the person entitled to the lien is satisfied; such person having, in the absence of statute or special agreement, no right to sell the property detained.

2. SAME—FORECLOSURE IN EQUITY—JURISDICTION.
    While equity, having acquired jurisdiction for other purposes, may order sales of property for the satisfaction of liens as an incident to the general relief, it has no jurisdiction to enforce a lien, whether common law or statutory, upon a bill filed solely for that purpose.

3. SAME — CORPORATIONS —STOCK AND STOCKHOLDERS —PLEADING.
    The fact that an accounting is asked in a bill filed by a corporation to foreclose a lien upon stock under 3 How. Stat. §

416165, for a debt of the holder, is insufficient to confer such jurisdiction, where there is nothing to show that the claim is not one which a court of law can deal with as an open account.

4. EQUITY PLEADING—DEMURRER—AMENDABLE DEFECTS.

The right of complainant to correct amendable defects in his bill, upon a demurrer thereto being sustained, is dependent upon his advising the court that he desires to make such amendments.

Appeal from Kent; Grove, J. Submitted June 15, 1898. Decided September 20, 1898.

Bill by the Aldine Manufacturing Company against James T. Phillips to foreclose a lien upon stock. From a decree dismissing the bill on demurrer, complainant appeals. Affirmed.

*Butterfield & Keeney*, for complainant.

*More & Wilson*, for defendant.

HOOKER, J. The defendant being a stockholder in the Aldine Manufacturing Company, that company filed the bill in this cause, claiming an indebtedness due to it from the defendant, upon open account, for $1,000 and upwards, and praying an accounting, and a decree of foreclosure of its lien upon his stock in default of payment. The lien is claimed to exist by virtue of section 416165, 3 How. Stat., which provides that the corporation shall at all times have a lien upon all the stock or property of its members invested therein, for all debts due from them to such corporation. The bill was demurred to on two grounds: (1) That there was no jurisdiction in equity to enforce the lien; (2) that the remedy provided by 3 How. Stat. §§ 4161c3–4161c7, inclusive, is exclusive. The demurrer was sustained, and the bill dismissed. The complainant has appealed.

Upon the part of the defendant it is claimed, *first*, that equity has no jurisdiction to enforce a sale of the prop-

erty to satisfy the statutory lien in a proceeding brought solely for that purpose; and, *second*, that, even if the court might do so when it had acquired jurisdiction for some other purpose within its jurisdiction, no such situation exists here. The theory upon which the bill seems to have been filed is that the lien of the complainant was akin to that of a mortgage or pledge of the stock, and carried with it a right to enforce payment of the debt secured by it, through foreclosure in a court of chancery, as well as by the notice and sale provided for by the statute to which allusion has been made.

This lien is not one which is created by direct agreement of the parties, such as a pledge or a mortgage, but arises by operation of law out of certain business relations, viz., that of corporation and stockholder. It is not in its nature an equitable lien, like the lien of a vendor of land sold upon contract for the purchase price. In such cases, under our practice, courts of equity have power to enforce the lien, upon bill practically for specific performance, to which the enforcement of the decree for the purchase price, by sale of the premises, is an incident. See *Fitzhugh* v. *Maxwell*, 34 Mich. 140, and *Boehm* v. *Wood*, Turn. & R. 332. It is, on the contrary, a legal security, closely analogous to a common-law lien, which last is said not to be enforceable in equity. Indeed, in cases of common-law liens, which always involved possession of the chattel, actual or constructive (2 Kent, Comm. 639), the creditor had no right to sell the chattel for the purpose of obtaining compensation. The lien was defined to be "the right of detention, in persons who have bestowed labor upon an article, or done some act in reference to it, and who have the right of detention till reimbursed for their expenditures and labor." *Oakes* v. *Moore*, 24 Me. 219 (41 Am. Dec. 379). As said by Chancellor Kent: "A lien is, in many cases, like a distress at common law, and gives the party detaining the chattel the right to hold it as a pledge or security for the debt, but not to sell it. It was said by Popham, C. J., in the *Hostler Case*,

Yel. 66, that an innkeeper might have the horse of his guest appraised and sold after he had eaten as much as he was worth. But this was a mere extrajudicial *dictum*, and it was contrary to the law, as it has been previously and subsequently adjudged." 2 Kent, Comm. 642, and cases cited. See, also, 1 Jones, Liens, § 335, where the author, in discussing a carrier's lien, says that it, "like all other common-law liens founded upon possession, gives him [the holder] no right to sell the property, but only a right to retain it until his charges are paid." Again, in section 1033 the learned author says that "a common-law lien * * * is merely the right of a person in possession of the property of another to detain it until certain demands * * * are satisfied."

In *Doane* v. *Russell*, 3 Gray, 382, a wagon maker sold a wagon, pursuant to notice to the owner, for the purpose of satisfying his lien, and the court held that he had no right to do so. In *Briggs* v. *Railroad Co.*, 6 Allen, 246 (83 Am. Dec. 626), a railroad company sold flour to pay their charges for its transportation, and it was held that they had "only a right to detain it until they were paid; not to sell it to obtain the remuneration to which they were entitled." In *Pothonier* v. *Dawson*, Holt, N. P. 383, Chief Justice Gibbs said: "Undoubtedly, as a general proposition, a right of lien gives no right to sell the goods." This was *obiter*, but nevertheless, from the eminence of the author, it is entitled to great weight. The doctrine was stated in *Jones* v. *Pearle*, 1 Strange, 556. Again, in *Lickbarrow* v. *Mason*, 6 East, 27, note, the rule was stated by Mr. Justice Buller as follows: "But he who has a lien only on goods has no right so to do [*i. e.*, sell and dispose of them]; he can only retain them till the original price be paid." See, also, *Walter* v. *Smith*, 5 Barn. & Ald. 439, cited in *Doane* v. *Russell*, *supra*, to the point that "a pledge as security for a debt * * * is a lien with a power of sale superadded." Chief Justice Shaw also cites *Cortelyou* v. *Lansing*, 2 Caines, Cas. 200; 1 Chit. Prac. 492; Cross,

Lien, 47; Woolrych, Com. & Merc. Law, 237.  In *Briggs v. Railroad Co.*, *supra*, Merrick, J., said: "And the rule, which is now well established, that a party having a lien only, without a power of sale superadded by special agreement, cannot lawfully sell the chattel for his reimbursement, is as applicable to carriers as it is to all others having the like claim upon property in their possession." While the doctrine of these cases—*i. e.*, that the creditor cannot sell the property—is indisputable, there was no impediment to the recovery of judgment and sale of the property, as well as any other property of the debtor, on execution.   *Tete v. Bank*, 4 Brewst. 308; *Buffalo, etc., R. Co.* v. *Dudley*, 14 N. Y. 336.

Does it follow that a common-law lien can be foreclosed in equity because it does not confer upon the creditor the right to sell the property?   It is evident that, in cases of common-law lien for a liquidated claim, a judgment and execution are as expeditious and effective as a proceeding in equity would be likely to be, and an application of the familiar doctrine that equity will not intervene when there is an adequate remedy at law would seem proper.   It is a significant fact that we are not cited to any well-settled line of authorities that supports the practice of foreclosing common-law liens in equity.   At the same time, Chancellor Kent, in discussing the subject, says: "I presume that satisfaction of a lien may be enforced by a bill in chancery." 2 Kent, Comm. 642. He supports the statement by no authorities, however. And in *Tete v. Bank*, *supra*, there is a *dictum* that in proper cases the creditor may invoke the aid of a court of equity to work out a sale.   The lien with which we have to do is not a common-law lien, but is statutory.   It has the attributes of a common-law lien, however, although the manual possession of the certificates of stock is not with the complainant.   Inasmuch as a transfer of the stock must be upon the books, it may be urged that the corporation has constructive possession.   But it is not of much importance whether it has possession or not.

Statutory liens often exist although the creditor has not possession of the property; and we know of no authority that treats the matter of possession as depriving statutory liens of the legal attributes of common-law liens, to which they are analogous. 1 Jones, Liens, § 104, says that "a statutory lien without possession may, by force of the statute, have the same operation and efficacy that a common-law lien has with possession." See Id. § 112; *Beall v. White*, 94 U. S. 382.

In the case of *Southern Mich., etc., Lumber Co. v. McDonald*, 57 Mich. 292, COOLEY, C. J., said that "log labor liens, [which are statutory] could give no jurisdiction to a court of equity. If valid, they were legal claims." In *Thames Iron-Works Co. v. Patent Derrick Co.*, 1 Johns. & H. 93, 97, the jurisdiction of equity to enforce by sale a builder's lien upon a vessel was denied; and in answer to the claim of exigency, alleged to arise from the expense of retaining the chattel, and the consequent necessity to make the security effectual by annexing to the passive lien the active right of sale, Mr. Vice Chancellor Wood said that "if, in a matter of this magnitude, the court should for the first time in 1860 establish such a new right as between persons dealing with chattels, it would injure rather than promote commercial interests." See *Canal Co. v. Gordon*, 6 Wall. 561, where the Federal Supreme Court held that the jurisdiction to enforce a statutory lien "rests upon the statute, and can extend no further."

In 23 Am. & Eng. Enc. Law, 697, it is said: "The lien is most frequently enforced by the refusal of the corporation to register transfers from an indebted member;" citing many cases. It adds that other methods of enforcement are foreclosure and sale and attachment. Few authorities are cited, and these will be discussed later. 1 Cook, Stock, Stockh. & Corp. Law, § 530, cites the same. But, when we search for cases where statutory or common-law liens have been foreclosed in equity upon bills filed for the purpose, we find few, though it is probable that the

States of Alabama, Kentucky, Illinois, and Maryland would sustain the practice. In *Westmoreland* v. *Foster*, 60 Ala. 448, a bill was filed against a tenant to enforce a lien for rent, against cotton in the hands of a vendee of the tenant. It was there held that a statutory lien, which is an incident of some contract made, is enforceable by the common processes of the law. This case proceeded upon the theory of a trust. *Tutwiler* v. *Land Co.*, 89 Ala. 391, was a case where the stockholder filed a bill to enjoin a sale of his stock on account of a failure to pay calls, and to have the affairs of the corporation settled, and an account stated. A demurrer was sustained, and the complainant appealed. The case was affirmed, and the court seems to have held that the lien on the stock could have been foreclosed in chancery, citing the *Westmoreland Case* as authority. This case was followed by *Crass* v. *Railroad Co.*, 96 Ala. 447. A bill was filed to enforce a common carrier's lien, and to require the defendants to interplead as to the ownership of the property which was in the carrier's possession. The court said that it had no doubt that a court of chancery had jurisdiction to enforce the lien, again citing the *Westmoreland Case* and the authority quoted from Kent. It is fair to say that, while each of these cases alleges some other ground of jurisdiction than the mere foreclosure of a lien, the latter case indicates that a bill filed for foreclosure only would be sustained.

In *Kenton Ins. Co.* v. *Bowman*, 84 Ky. 430, a suit was brought to foreclose a mortgage on the property of the wife of Shinkle to the complainant. Shinkle held stock in the complainant company, and by an amended petition the complainant claimed a lien on that stock to secure this mortgage debt, or any part which should remain unsatisfied by the foreclosure of the mortgage. A decree of foreclosure was granted. In *Brent* v. *Bank*, 10 Pet. 596, executors of a deceased stockholder filed a bill to compel a transfer of stock for the benefit of the United States, it having been assigned by the testator as security for a debt

due to the government. Counsel stipulated that, in case it was found that the bank had a lien upon the stock, the court might decree that the stock should be sold to satisfy it, which it did. In *Bank of Kentucky* v. *Bonnie*, (Ky.) 43 S. W. 407, an action was brought to enforce a lien upon collaterals held in pledge by a bank, and also to enforce a statutory lien upon the stock of the debtor. It does not appear that the right to decree sale was questioned. In *National Bank* v. *Tumbler Co.*, 172 Pa. St. 614, a bill was filed to compel a transfer of stock to a pledgee. The Tumbler Company filed a cross-bill to enforce its lien, which was sustained, and the stock was sold to satisfy it. In the case of *Farmers' Bank of Maryland*, 2 Bland, Ch. 394, an administrator filed a bill to compel the bank to apply stock dividends upon indebtedness due the bank from the intestate, and to sell the stock and apply the proceeds, and that only the deficiency after such application of dividends and sale of stock should be admitted as a claim against the estate.

It will be seen from the foregoing that, in nearly all of these cases, jurisdiction might have been sustained upon other grounds than that of foreclosure, and that the court might therefore, in order to do justice between the parties, have allowed a sale of the stock. Such was the case in *Kenton Ins. Co.* v. *Bowman*, 84 Ky. 430. The later case of *German Nat. Bank* v. *Trust Co.*, (Ky.) 40 S. W. 458, was a simple foreclosure bill, and sustains the practice on thea uthority of *Kenton Ins. Co.* v. *Bowman*. We have already seen that a similar course of decision is found in Alabama, the doctrine being based upon cases which were distinguishable. In Maryland the earlier case was not a foreclosure bill, but was a bill filed against the bank to compel an accounting and transfer of stock, on which the bank claimed a lien. In the opinion the lien was treated as a mortgage, and it is intimated that it might be foreclosed. Ultimately, the stock was sold. The subsequent case of *Reese* v. *Bank of Commerce*, 14 Md. 271, permitted a foreclosure of a lien on stock. In *Brent* v. *Bank*,

10 Pet. 596, the decree may be ascribed to stipulation, notwithstanding the fact that the bill was filed to compel a transfer. In *Bank of Kentucky* v. *Bonnie* the bill was filed to foreclose a statutory lien in conjunction with a mortgage on other property. In *National Bank* v. *Tumbler Co.*, a bill was filed to compel a transfer; while in *Re Morrison*, 10 N. B. R. 105, the sale was under bankruptcy jurisdiction. In the case of *Cairo, etc., R. Co.* v. *Fackney*, 78 Ill. 116, in an action of *assumpsit*, broad language was used as to the jurisdiction of equity in the enforcement of statutory liens, but it must be remembered that the lien involved there was a lien against a railroad.

We have yet to notice our own case of *Citizens' State Bank of Monroeville* v. *Kalamazoo County Bank*, 111 Mich. 313, where stock was sold and proceeds applied upon a lien. This question was not discussed, and the decree was made upon a cross-bill, where the original bill was filed to compel a transfer of stock. The court had jurisdiction for another purpose, and, having jurisdiction for one purpose, was justified in doing complete justice between the parties.

It is manifest that there is confusion in the law upon this subject. If it is true that equity has jurisdiction to enforce payment by foreclosure in all cases of statutory liens, it must be because of a difference between them and common-law liens, which we have not been able to discover, or because of the force to be accorded to authorities comparatively modern, few of which are cases of foreclosure merely. If that is the rule, it will be hard to distinguish the present case from any other lien for labor, carriage, or storage. The log lien, which has been discussed, would be no exception; for, if chancery has a general jurisdiction to enforce liens, it is not lost by the addition of a statutory method of relief. Authorities are numerous in support of this proposition. So that, to our mind, the authorities, if there are such, that hold the statutory remedies are exclusive, recognize the want of

jurisdiction in equity. We are of the opinion that resort to equity is neither necessary nor permissible in the majority of lien cases, and that the courts of law can deal with them cheaply and expeditiously. On the other hand, we have no doubt that equity, having jurisdiction for other purposes, may order sales of property for the satisfaction of liens, as was done in our own case already cited.

It is contended that such jurisdiction is shown by the bill in this case, but we think not. 'It seems to be a foreclosure bill simply. It is urged that an accounting is necessary; but we think the bill does not show that complainant's claim is not one that a court of law can deal with as well as any other case of open account. We see no opportunity for a multiplicity of suits, and the bill does not show that for any reason the remedy by judgment and execution is not adequate.

Counsel urge that they should have been given an opportunity to amend, and the bill should not have been dismissed peremptorily. Under the case of *Lamb* v. *Jeffrey*, 41 Mich. 719, the complainant should have been given an opportunity to amend its bill, if it desired it. We cannot assume that it did, and the record does not show that it asked it, so far as we are advised.

We must affirm the decree, with costs.

GRANT, C. J., MOORE and LONG, JJ., concurred. MONTGOMERY, J., did not sit.