DANIEL S. PIPER v. JOSEPH A. SAWYER and Others.

July 14, 1898.

Nos. 11,115—(191).

**Contract an Equitable Mortgage—Merger.**

A certain contract, entered into between plaintiff and defendants, concerning certain real-estate mortgages upon lands owned by the latter, construed with reference to other facts and circumstances constituting a part of the same transaction. *Held*, that said contract constituted an equitable mortgage upon the lands, into which the prior mortgages had merged.

**Same—Complaint and Findings—Foreclosure.**

*Held*, also, under the allegations of the complaint herein and the findings of fact, that plaintiff was entitled to a foreclosure of the equitable mortgage in this action.

Action in the district court for Steele county to foreclose a certain contract relating to real-estate mortgages and also to foreclose the mortgages. The cause was tried before Buckham, J., who found for plaintiff. From the judgment entered on the findings defendants Joseph A. Sawyer and Nellie A. Sawyer appealed. Reversed.

*J. A. Sawyer*, for appellants.

*Wheelock & Sperry* and *Robert Taylor*, for respondent.

COLLINS, J.

February 19, 1895, defendants, husband and wife, were the owners in fee of a farm embracing 790 acres. Plaintiff held a matured mortgage upon all of this land, except 10 acres, on which there was no incumbrance. There were three prior mortgages on parts of this farm, and two of these, both past due, had been assigned to plaintiff by the mortgagees. The third, known as the "Willis Mortgage," would not mature until July, 1895. On the day first mentioned plaintiff, of the first part, and defendants, of the second part, and one Woodman, of the third part, entered into a tripartite agreement, in which $20,400 was fixed as the total amount secured by the four mortgages before mentioned (although it seems to have been more), and it was agreed:

First. That defendants should forthwith convey to plaintiff by deed, containing special warranty covenants, all of the lands incumbered and the 10 acres unincumbered; that defendants should pay certain taxes on the lands; that they should keep the farm buildings insured for plaintiff's benefit; and that, commencing on the last day of the month of February, they should, on the last day of each and every month thereafter, and continuously, pay to plaintiff the sum of $100, no time being expressly fixed when said payments should cease.

Second. Plaintiff was to procure an assignment of the Willis mortgage to himself, thus becoming the owner of all of the mortgages; he was to execute a warranty deed in due form of law of all of said lands, in which defendant wife was to be named as grantee, and this deed was to be placed in the hands of Mr. Woodman, to be held by him in escrow until defendants "shall have paid all said monthly payments," and also the sum of $20,400, the latter to be

paid in sums of $50, at defendants' option. The contract further provided as follows, a part of which we italicize:

"It being agreed and understood that said parties of the first part shall become entitled to the delivery to them or their assigns of said deed, held by said third party in escrow as above, at any time whatever: provided, only, that they continuously pay said $100 monthly, and also pay said sum of $20,400 in time and manner as above; and it is further provided that said monthly payments shall be diminished from and after any payment upon said $20,400 in the same proportion which the sum or sums paid thereon bear to said total sum of $20,400; *provided, further, that upon the failure by said parties of the first part to pay said monthly payments, all their rights hereunder shall cease and determine.*"

Defendants duly executed and delivered the deed to plaintiff, and it was soon afterwards recorded. Plaintiff purchased and procured an assignment of the Willis mortgage, and also executed and placed a deed from himself to Mrs. Sawyer in Woodman's hands, as agreed on, and the latter, in form, became a party to the contract. The defendants paid the monthly instalments during the year 1895, and then defaulted. Nothing has been paid on the principal.

The complaint in this action set up the execution, delivery and record of each of the mortgages; the assignments of the three which in point of time preceded that in which plaintiff was the mortgagee, and the recording of each assignment; the making of the contract before referred to; and the default of defendants in its terms and conditions. Judgment was demanded to the effect that by reason of this default on defendants' part the original sums due upon the notes secured by the four mortgages be adjudged due, and a foreclosure of each mortgage be had for the respective sums due, with a sale of the mortgaged property to satisfy the debts, or that the contract itself be foreclosed by sale of the premises therein described to satisfy the amount due thereon, with attorney's fees, costs and expenses. Further and other equitable relief was also demanded.

At the opening of a trial of the issues made by defendants' answer and plaintiff's reply, the former seem to have offered that judgment might be entered for a foreclosure of their rights in the contract; but the offer was declined, and a trial had,—the real contention

being over the construction to be placed upon a part of the language of the contract hereinbefore quoted. On findings of fact the court below ordered judgment for a foreclosure of each of the mortgages and all costs of the proceedings, the total amount for which judgment was ordered being several hundred dollars in excess of the amount due, if it be held that the four mortgages merged in the transaction of February 19, and that the contract of that date became an equitable mortgage, as between plaintiff and defendants, for the principal sum of $20,400, extinguishing the older mortgage securities then in plaintiff's hands, and also that held by Willis when it got into his hands by assignment as agreed upon.

That it was competent for the parties to enter into a contract in the nature of an equitable mortgage, which would be a substitute for, and would operate as an extinguishment of, plaintiff's then-existing rights under his past-due mortgages, is not questioned; nor can it be doubted that he could enter into a valid contract of that same nature in reference to the acquisition and merger of the Willis mortgage. There was ample consideration for such a contract, and when plaintiff stipulated that the amount for which he would release the lien should be $20,400,—really less than the amount actually due,—he either took the chances upon that being sufficient to cover the amount due, or for an ample consideration, found stated in the contract, relinquished the excess. The contract being valid and enforceable, the rights of the parties depend on the construction to be placed on the words which we have italicized in the foregoing quotation, and these are to be construed in the light of the surrounding facts and circumstances, some of which are prominent and very influential.

It is to be observed that, as part of the transaction, defendants conveyed to plaintiff all of the mortgaged premises and 10 acres of land on which there was no incumbrance; that the defendants' right to pay $100 per month, which evidently was considered as payment of interest on the principal sum at a trifle less than 6 per cent. per annum, was unlimited as to time; that the option to pay this principal sum when defendants chose was conferred upon them, should they otherwise comply with the terms of the contract; and, finally, that the only provision which expressly referred to a termi-

nation of defendants' rights was that which provided that in case of their failure to make the monthly payments "all their rights hereunder shall cease and determine."

The legal effect of these salient points in the contract, and of what was done in pursuance of the same, was to transfer the record title of the land to plaintiff; to give him additional security; to reduce the principal of the debt, a part of which was not due, to $20,400; indefinitely to postpone and extend the time for the payment of the principal sum, if defendants made the monthly payments; and to provide, not that the original indebtedness should remain, and the original securities be enforced, for the full amount due in case of a failure to pay $100 per month, but simply and solely that defendants' rights under the contract itself should end. In other words, if they defaulted in their continuous monthly payments of $100, their right to postpone the due day of the principal sum, and to extend the time of its payment, at their option, and their other right to pay the same in sums of not less than $50 each, ceased and terminated.

We are of the opinion that no other construction can be given to the language used, when we consider the facts specially referred to and their legal effect. For instance, under this contract, defendants could have postponed payment of the principal sum therein mentioned at their pleasure, and could have prevented any action whatsoever thereon until foreclosures of the mortgages became barred under the statute of limitations. But, had this been done, the indebtedness of $20,400, or any unpaid part of the same, would have remained unpaid, and would have still been secured by an equitable mortgage on the land. This fact seems to conclusively establish the proposition that the contract has always been such a mortgage, in which the four prior incumbrances had merged.

The court below was in error when it held that these prior mortgages remained, and were valid and subsisting liens on the land therein described.

It is argued by defendants' counsel that in this action plaintiff is not entitled to a foreclosure of this equitable mortgage, the reason given being that he elected to institute this proceeding for the foreclosure of the original mortgages only, and expressly de-

clined to accept the relief afforded by a foreclosure of that found in the contract. As before stated, the complaint was broad enough in its allegations to have justified findings upon which could have been predicated conclusions of law in accordance with the views herein expressed, and ordering a foreclosure of the equitable mortgage for the sum due on the contract, with proper costs of the proceeding; and the findings of fact actually made warrant such conclusions, except that the sum due was not ascertained. No good reasons existed at the termination of the trial below, and none now exist, why plaintiff should not be entitled to a foreclosure in this action of his equitable mortgage on the 790 acres.

The judgment appealed from is reversed and set aside, together with all subsequent proceedings in the direction of its enforcement, if any there are. Upon the remanding of the cause to the court below, it will proceed to determine the amount due upon the equitable mortgage, amend its findings of fact to correspond, and also amend its conclusions of law in accordance with the views herein expressed.