Decided 3 July, 1905.

**TUCKER r. OTTENHEIMER.**

81 Pac. 360.

ADMINISTRATORS—AGREEMENT FOR LIEN ON LANDS—VALIDITY—STATUTE OF FRAUDS.

Where an administrator and another had succeeded to all the interests of the estate, and, the personal property being exhausted, such parties agreed that the commissions due the administrator, together with moneys advanced by him individually, should be a lien on the lands of the estate, and in pursuance of the agreement the administrator entered into possession of the lands, and it was agreed that the profits should be divided according to the interest of the parties, the agreement was void, under the statute of frauds, and the administrator not entitled to enforce his lien in equity.

From Baker: ROBERT EAKIN, Judge.

Statement by MR. CHIEF JUSTICE WOLVERTON.

This was originally an ejectment action commenced by a corporation called S. Ottenheimer Estate against John A. Tucker, who answered by a cross-bill seeking equitable relief. It sets out, in substance, that the defendant, the S. Ottenheimer Estate, is a corporation, its purposes being to conduct the business of such estate, the stockholders being the heirs of S. Ottenheimer; that on July 27, 1884, one Harry A. Johnson died, leaving as his heirs at law, his mother, Samantha Johnson, his half-brother, Charles Herring, and his half-sister, Elizabeth Herring (now Baldock); that Johnson at the time of his death was the owner of certain real property, which is described; that thereafter, in 1892, plaintiff purchased the Baldock interest; that, shortly after the decease of Johnson, plaintiff was appointed administrator of his estate, and took possession of the property thereof; that he regularly proceeded with the administration, and on October 5, 1894, duly filed his final account as such administrator, which was on November 6th following settled and approved, and the plaintiff discharged; that at the time of such final settlement S. Ottenheimer had succeeded by purchase to an undivided two-thirds interest in the real property, and plaintiff to the remaining one-third interest, the whole being subject to the debts of the deceased and the expenses of administration; that pending

the administration there was forced upon the administrator certain litigation, causing much expense and depreciation of the property of the estate; that at the time of such final settlement the personal property had been exhausted, and aside therefrom the plaintiff had advanced and paid out on his individual account in meeting the expenses $3,045.75; that his commissions as administrator amounted to $269.72, aggregating, with the costs of final settlement, $3,440.42, all of which were allowed plaintiff upon such final settlement; that by the express consent and understanding of the said S. Ottenheimer and the plaintiff, as such administrator, with a view to effecting a final settlement out of court, it was agreed that the said sums aggregating $3,440.42 should be and remain a lien upon the real property in the nature of an equitable mortgage, and that plaintiff should enter into possession of the same, and the whole thereof, and out of the proceeds, rents and profits arising therefrom, or from the sale of the premises, in case of a sale being made, should be paid such demands, with interest, and that the balance of the property remaining should be divided between the plaintiff and Ottenheimer according to their respective interests; that plaintiff immediately entered into possession of said real property with the express consent of Ottenheimer, and so continued in possession until the latter's death, in January, 1898, and has since remained in such possession by virtue of said agreement with him.

The plaintiff then shows some receipts for rentals by Ottenheimer, and other matters of account touching the product of the land, and also some complications arising by way of attachment, and alleges that, while plaintiff was so in possession with the consent of Ottenheimer, he made certain valuable and necessary improvements upon the land, by erecting a dwelling house thereon at a cost of about $400 a barn at $100, and clearing up and reducing to cultivation 20 acres of land at a cost of $40, and that the defendant corporation claims some interest in the land as successor to S. Ottenheimer. The prayer is that upon final hearing plaintiff be decreed to be the owner in fee of an undivided one-third of the land; that defendant be decreed to be indebted to plaintiff in the sum of $458.22, the amount due

plaintiff on account of the rents, issues, and profits, and permanent improvements, and the further sum of $2,293.60, with legal interest, being two-thirds of the amount of the equitable lien claimed upon the land; that said lien be foreclosed, and the land sold to satisfy the demand; and for other relief. A motion was filed to strike out many parts of the complaint, which was sustained, being treated as a demurrer; and, the plaintiff refusing to plead further, the cause was dismissed, and he appeals.

<div align="right">AFFIRMED.</div>

For appellant there was an oral argument by *Mr. Thomas Harrison Crawford,* with a brief over the names of *Crawford & Crawford* and *Ramsey & Oliver,* to this effect.

I. The taking possession by Tucker and the making of permanent valuable improvements thereon under the oral contract and agreement with S. Ottenheimer was a sufficient part performance to avoid the statute of frauds: *Odell* v. *Morin,* 5 Or. 96; *Whiteaker* v. *Vanschoiack,* 5 Or. 113; *Brown* v. *Lord,* 7 Or. 302; *Wagonblast* v. *Whitney,* 12 Or. 83 (6 Pac. 399); *Cooper* v. *Thomason,* 30 Or. 161 (45 Pac. 296); *Barrett* v. *Schleich,* 37 Or. 613, 617 (62 Pac. 792); *Pugh* v. *Spicknall,* 43 Or. 489, 494 (73 Pac. 1026, 74 Pac. 485); *Moulton* v. *Harris,* 94 Cal. 420 (29 Pac. 706); *Ford* v. *Steele,* 31 Neb. 521 (48 N. W. 271); *Taylor* v. *Von Schroeder,* 107 Mo. 206 (16 S. W. 675); Pomeroy, Spec. Perf. § 115.

II. The facts alleged in the amended cross-bill and admitted by the demurrer, make out clearly a case of equitable fraud, upon which the court will hold the defendant ex maleficio a trustee of the legal title to these lands to be sold and disposed of under the direction of the court, for the payment of plaintiff's claim and the division of the balance of the proceeds in accordance with the contract between plaintiff and S. Ottenheimer: Perry, Trusts, § 191; Hill, Trustees (4 Am. ed.), 234; 2 Pomeroy, Eq. Jur. 1053-1055; *Paine* v. *Wilcox,* 16 Wis. 202, 217; *Cutler* v. *Babcock,* 81 Wis. 195 (29 Am. St. Rep. 882, 889, 51 N. W. 420); *Laing* v. *McKee,* 13 Mich. 124 (87 Am. Dec. 738); *Wilson* v. *Eggleston,* 27 Mich. 260; *Beegle* v. *Wentz,* 55 Pa. 369

(93 Am. Dec. 762); *Seichrist's Appeal,* 66 Pa. 237; *Goodwin* v. *McMinn,* 193 Pa. 646 (74 Am. St. Rep. 703, 44 Atl. 1094); *Ahrens* v. *Jones,* 169 N. Y. 555 (88 Am. St. Rep. 620, 62 N. E. 666); *Brison* v. *Brison,* 75 Cal. 525 (7 Am. St. Rep. 189, 17 Pac. 689); *Hays* v. *Gloster,* 88 Cal. 560 (26 Pac. 367); *Larmon* v. *Knight,* 140 Ill. 252 (33 Am. St. Rep. 229, 29 N. E. 1116); *Rollins* v. *Mitchell,* 52 Minn. 41 (38 Am. St. Rep. 519, 53 N. W. 1020).

For respondent there was an oral argument with a brief by *Mr. William Fontaine Butcher (Butcher & Correll,* counsel), to this effect.

1. The order of the county court pretending to settle this title on Tucker under an alleged trust agreement with Ottenheimer was absolutely void, for probate courts in this State have nothing whatever to do with the title to real property, being concerned only with disposing of whatever title or interest deceased had, in order to pay his debts: B. & C. Comp, § 1221; *Hanner* v. *Silver,* 2 Or. 336; *Pryor* v. *Downey,* 50 Cal. 388 (19 Am. Rep. 656); *Horton* v. *Barto,* 17 Wash. 675 (50 Pac. 587).

2. Appellant claims some kind of an equitable lien or trust and seeks some sort of performance of something not promised to be done in the alleged parol agreement, but presumed by him to be what should be the result of the alleged parol contract. It is the very essence of this conception that, while the lien continues, the possession of the thing upon which the lien is claimed remains with the debtor, subject to the incumbrance: 1 Pomeroy, Eq. Jur. § 165; 2 Pomeroy, Eq. Jur. § 1233.

3. Where, as here, the claim is of an express contract, it must be in writing (*Dagget* v. *Rankin,* 31 Cal. 321, 327; *Chase* v. *Peck,* 21 N. Y. 581, 583; *McQuie* v. *Peay,* 58 Mo. 56); and there must be a valuable and adequate consideration: 1 Pomeroy, Eq. Jur. §§ 370, 372; *Eaton* v. *Patterson,* 2 Stew. & P. 9.

4. To take this case out of the class controlled by the statute of frauds, part performance must be shown that is referable only to the contract claimed: Waterman, Spec. Perf. § 261; *Morgan* v. *Bergan,* 3 Neb. 209, 213; *Cutler* v. *Babcock,* 81 Wis. 195 (29 Am. St. Rep. 882, 886, 51 N. W. 420); *Emmel* v. *Hayes,*

102 Mo. 186 (22 Am. St. Rep. 769, 772, 11 L. R. A. 232, 14 S. W. 209) ; *Wallace* v. *Rappelye,* 103 Ill. 229, 252.

5. Where the contracting parties already maintain such relations as to preclude the possibility of surrendering and taking possession under and in pursuance of the contract (in the present instance the parties were tenants in common), there cannot be a part performance that will take the case out of the rule of ‘the statute: *Workman* v. *Guthrie,* 29 Pa. 495, 511; *Cutler* v. *Babcock,* 81 Wis. 195 (29 Am. St. Rep. 882, 886, 51 N. W. 420) ; *Emmel* v. *Hayes,* 102 Mo. 186 (22 Am. St. Rep. 769, 772, 11 L. R. A. 232, 14 S. W. 209).

MR. CHIEF JUSTICE WOLVERTON delivered the opinion.

The only question presented by the appeal is whether the cross-bill states facts entitling the plaintiff to equitable relief. The order of final settlement referred to in the complaint is made a part thereof, and shows that the estate was finally settled and the administrator discharged, and it was ordered by the court, among a great many other things, that the amount allowed the administrator over and above the receipts, to wit, the sum of $3,440.42, be declared a lien upon the real estate of the deceased. After ascertaining the present ownership of the real estate, the order further recites "that each and all the said parties are desirous and anxious that said estate should be finally settled, and that the charges thereon growing out of the administration of said estate should be ascertained herein, and that same should be made a charge upon the said real estate, to be hereinafter settled and adjusted and paid by the several owners thereof in accordance with their equities therein," and thereupon decrees that "said administrator turn over to the said parties * * all of the real estate belonging to said estate, and that the said several parties take the said real estate subject to the said lien in favor of this administrator for the said sum of $3,440.42, the same to be adjusted and settled between them in such manner and by such course or process as they may adopt therefor." There was no appearance by any of the heirs or their successors, except the administrator himself.

The verbal contract relied upon is not a contract for the sale of land where the purchaser has gone into possession in pursuance of it and made valuable improvements, nor is it a contract to give or execute a mortgage or other instrument with a view to creating a lien upon the premises, but it is set forth as itself creating the lien, and reliance is had thereon solely for the equitable relief prayed for. It is conceded that the county or probate court had no power or authority to adjudge a lien upon the realty of the estate in favor of plaintiff so as to bind the heirs, and its order or decree is not relied upon as within itself impressing the lien.

A verbal contract for a mortgage, based upon a consideration, where there has been part performance in pursuance of the contract, may be specifically enforced, upon the same principle as equity will enforce a verbal contract for the sale of realty. The ground of the equity is well stated in *Dean* v. *Anderson,* 34 N. J. Eq. 496, 500: "Where an agreement has been executed or in part performed by the complainant, and the acts done place him in a situation which is a fraud upon him unless the agreement is executed, equity will not permit the defendant to protect himself from executing his part of the agreement by pleading that it was not in writing. The ground upon which this court acts in cases of part performance is fraud in refusing to perform after performance by the other party, and the court will interpose and grant relief, notwithstanding the statute, when the complainant shows a performance on his side, by which he would suffer an injury amounting to fraud by the refusal to execute the agreement on the part of the defendant." The doctrine is well settled: *King* v. *Williams,* 66 Ark. 333 (50 S. W. 695); *Irvine* v. *Armstrong,* 31 Minn. 216 (17 N. W. 343); *Hicks* v. *Turck,* 72 Mich. 311 (40 N. W. 339); *Baker* v. *Baker,* 2 S. D. 261 (49 N. W. 1064, 39 Am. St. Rep. 776). But such is not the case here. There is no agreement for a mortgage or other lien, and part performance in pursuance thereof. The agreement is direct and explicit between the parties, and itself constitutes the lien, or else there is none. The condition is the same as if one party had attempted by purely verbal arrangement to create a mortgage in favor of another upon realty for

the security of a sum loaned. Could the agreement be enforced, not having been entered into in writing? A mere statement of the proposition shows it so clearly to come within the statute of frauds that it is scarcely necessary to dilate upon the subject. Were such a transaction tantamount to an equitable mortgage, the formal written mortgage would not at all be necessary, and the statute of frauds, as it relates to mortgages of realty, would be a dead letter. A mortgage is in form a conveyance: *Watson v. Dundee Mtg. Co.* 12 Or. 474 (8 Pac. 548). And it should be in writing, and executed with like formalities as a deed; and to permit a debt to be charged upon realty as a lien by verbal agreement would be evasive of the statute. If there has been part performance or possession given, it has been in pursuance of an agreement that never created a lien, and the acts of part performance will not create it. Acts of part performance, as they relate to a contract of sale, will usually create an equity that will afford relief by way of specific performance; but, where neither the contract nor the acts of part performance are tantamount to the creating of a lien, there can be no enforcement of it. The debt in question was not contracted on the credit of the property, and, the agreement being insufficient to impress a lien on account of it, equity will not afford the relief sought: *Bennett* v. *Nichols,* 12 Mich. 22.

The further contention is made that the defendant should be held to be a trustee ex maleficio of the legal title, subject to the lien of plaintiff for his claim of $3,440.42. The principle invoked is that it would be a fraud upon the plaintiff to allow the defendant to retain the land, or his part of it, freed of the incumbrance of the indebtedness of the estate, because in reliance upon the alleged agreement the plaintiff was induced to forego his right to sell the land in probate for its payment of such indebtedness. The statement of the complaint is somewhat vague, which is that in order to effect a final settlement of the estate, and get the same out of court, it was agreed that said sum should be and remain a lien upon the real estate in the nature of an equitable mortgage; that plaintiff should enter into possession of the real estate, and that said sum, with interest, should be paid out of the rents and profits thereof, or the sale

of the premises in case sale thereof was made; and that the balance of the property should be divided equally among the parties. The agreement provides for no sale, but that if one should be made, the proceeds should be applied towards the indebtedness, and one would suppose that the intendment was that the rents and profits should finally cancel the demand; the defendant assuming no personal obligations to pay any part of it. Defendant's ownership of the legal estate comes to it naturally enough by descent and purchase, and none of plaintiff's funds have been employed in its acquirement. So there can arise no resulting or constructive trust out of the situation. The only element of mala fides that can be injected into the transaction is that it would be a fraud upon the plaintiff not to let him get his money out of the property, because it was agreed verbally between the parties or their predecessors that the estate's indebtness should be and remain a lien upon the real estate in the nature of an equitable mortgage. But this brings us back to the first question, which is whether the agreement is within the statute of frauds, and this we have resolved against its validity.

It is urged that plaintiff was induced to waive his lien upon the land for the money due him from the estate, but that stands as the only consideration for the verbal agreement, and, being performed on his part, stands in no stronger light than if he had loaned the money direct to the defendant, and thereupon entered into a verbal agreement depending upon it alone to constitute the lien, or, as it is termed, an equitable mortgage. The agreement is wholly incompetent to impress a lien of any sort, and part performance cannot help the situation. So, too, the entering into possession could not avail for the purpose. If any rights have arisen by virtue of possession and the making of improvements upon the land by assent of the defendant, they do not operate to confer a lien through the verbal agreement which constitutes the very groundwork of his cause of suit.

The cases of *Paine* v. *Wilcox,* 16 Wis. 215, and *Cutler* v. *Babcock,* 81 Wis. 195 (51 N. W. 420, 29 Am. St. Rep. 882), so much relied upon, do not seem to us to be in point. In each of these cases the party complained against had obtained the legal title to the property under conditions that it was accounted a fraud

to permit him to retain it, and he was therefore held to be a trustee ex maleficio. But here the conditions are quite the contrary. The defendant has simply come into its own, with a verbal agreement that a lien should be continued thereon; and, while it may be a breach of a void contract for it to disavow the agreement, it has acquired nothing that it would be a fraud upon the plaintiff to permit it to retain. Mortgages do not usually arise ex maleficio, but a trust might.

For these reasons, we do not think the complaint sufficient, and the decree of the trial court will therefore be affirmed.

AFFIRMED.

<div align="center">

Decided 10 July, 1905.