## MERIDIAN OIL CO. v. RANDOLPH.

No. 523.   Opinion Filed July 12, 1910.

(110 Pac. 722.)

MORTGAGES—Construction—Foreclosure — Receiver. Where, in an action to foreclose a mortgage on certain land after condition broken, the mortgage provides, "it is further agreed that the" mortgagor "shall deliver to the" mortgagee "50 per cent of the oil produced by it, that is, the" mortgagor, "in tanks on the land herein described as reserved by the" mortgagor "or the proceeds of said 50 per cent at the option of the" mortgagor, and the same "or its proceeds shall be applied by the" mortgagee "as a credit on" the mortgage note, held that, in addition to the mortgage lien on said land, an equitable lien was thus reserved on 50 per cent. of the oil so produced or its proceeds, as security for the mortgage debt. And where, on an application to appoint a receiver for the land and all the oil so produced thereon, the evidence discloses that $27,000 of the $35,-000 remains unpaid, that the mortgagor was removing the oil from off the land and appropriating the proceeds other than to the payment of the mortgage debt, held, further, that the court did not err in appointing a receiver and in refusing to vacate the appointment on motion of the mortgagor.

(Syllabus by the Court.)

*Error from District Court, Okmulgee County; John Caruthers, Judge.*

Action by T. F. Randolph, trustee, against the Meridian Oil Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*William M. Matthews* and *George S. Ramsey,* for plaintiff in error.—Citing: *Fire Ins. Co. v. Broadbent* (Minn.) 79 N. W.

676; *Brown v. Chase,* 1 Walker's Ch. (Mich.) 43; *Lindsey v. Am. Mortgage Co.* (Ala.) 11 So. 770; A. & E. Enc. L. (2d. Ed.) vol. 23, p. 1028; Pomeroy, Eq. Jurisp., vol. 5, sec. 97, p. 173; *Union Trust Co. v. Charlotte Electric Co.* (Mich.) 116 N. W. 379.

*McCrory & Eichenauer, F. F. Lamb,* and *George L. Mann,* for defendant in error.

TURNER, J.   On September 23, 1908, T. F. Randolph, trustee for the Brown Oil & Gas Company, defendant in error, as plaintiff, sued the Meridian Oil Company, plaintiff in error, in the district court of Okmulgee county for a balance due on a promissory note, and to foreclose a mortgage on 120 acres of land (describing it) located in the Morris Oil Field in Okmulgee county given to secure the same.   Said note, dated September 16, 1907, is for $35,000, payable in one year by the Meridian Oil & Gas Company to the Brown Oil & Gas Company.   The mortgage contains the following:

"It is further agreed that the said Meridian Oil Compa'ny the maker, shall deliver to the Brown Oil & Gas Company fifty per cent. of the oil produced by it, that is, the Meridian Oil Company, in tanks on the land, herein described as reserved by the Meridian Oil Company or the proceeds of said fifty per cent at the option of the said Meridian Oil Company, and the same, or its proceeds, shall be applied by the said Brown Oil & Gas Company as a credit on this $35,000.00 note."

The petition, after reciting the foregoing facts, further alleges the balance due on the note to be $27,000, condition broken, and that defendant has failed to deliver to plaintiff 50 per cent. of said oil or its proceeds; that of said proceeds defendant has taken a large portion and applied it to improving the mortgaged land in drilling oil wells thereon and equipping the same.   Said note and mortgage are filed as exhibits to the petition, which prays for a temporary order restraining defendant from removing any of its fixtures or other property from off the premises and that the mortgage be foreclosed.

On November 16, 1908, after answer filed, in effect, a general denial, on motion of plaintiff alleging in substance that de-

fendant had failed to pay over to the Brown Oil & Gas Company 50·per cent. of the proceeds derived from the sale of the oil from off the premises, that they were otherwise appropriating the proceeds derived therefrom, the insolvency of defendant, and irreparable injury, plaintiff prayed for and a receiver was appointed and qualified. In support of the application, it was shown that prior to the maturity of the note $11,000 had been paid thereon from time to time, the last payment being made on April 1, 1908, at which time there was due $7,000 and only $3,200 paid; that 11 oil wells had been drilled by defendant on the premises from which oil had been run during the months of April, May, June, and July, 1908, and four more runs made since this suit; that there are 3,500 barrels of oil tanked on the land; that it cost $4,500 to sink a well, and that the total expenditure in so doing was $27,000; that the property was yielding 100 barrels per day a year prior to the hearing, and at that time was yielding 150 barrels per day, and that the property and equipment was in excellent condition. There was no attempt to prove the alleged insolvency of defendant, or that the land was insufficient to pay the mortgage debt. On November 20, 1908, defendant moved the court to vacate the order appointing said receiver, which, no further showing being made on either side, the court overruled. Defendant brings the case here and says the court erred in overruling said motion.

Assuming, but not deciding, that the evidence adduced on the hearing of the application to appoint is properly before us for review on the motion to vacate the appointment, the appointment was properly made, and for that reason the court did not err in refusing to vacate it. Relying on Wilson's St. Okla. 1903, § 4441, which reads:

"A receiver may be appointed by the Supreme Court, the district court, or any judge of either, or in the absence of said judges from the county, by the probate judge: * * * Second. In an action by a mortgagee for the foreclosure of his mortgage and sale of the mortgaged property, where it appears that the mortgaged property is in danger of being lost, removed or materially injured, or that the condition of the ·mortgage has not been per-

formed, and that the property is probably insufficient to discharge the mortgage debt. * * * Sixth. In all other cases where receivers have heretofore been appointed by the usage of the courts of equity"—

plaintiff contends that the removal of the oil from off the demised premises and its sale by defendant without applying 50 per cent. of the proceeds in reduction of the mortgage debt was of itself sufficient to invoke the discretion of the court to make the appointment. We think so too, provided the lien of the mortgage extended to said per cent. of the oil produced or its proceeds. If it did, under the statute a receiver should have been appointed, otherwise not. That the intention appears on the face of the mortgage to create a lien on the land *in esse* and an equitable lien upon 50 per cent. of the oil not *in esse,* but as soon as the same might come *in esse,* as security for the payment of the mortgage debt, we think is clear.

Mr. Pomeroy in his work on Equity Jurisprudence (volume 3 [3d Ed.] § 1235), says, in substance, that the doctrine of equitable lien may be stated in its most general form to be that every express executory agreement in writing, whereby the contracting party insufficiently indicates an intention to make some particular property, real or personal, or fund therein described or identified, a security for a debt or other obligation, creates an equitable lien upon the property so indicated, and that said lien is enforceable in equity in the hands of the contractor. He further states in section 1236, in substance, that the doctrine is carried still farther, and applies to property not *in esse* at the time of the contract, and says:

"It is well settled that an agreement to charge or to assign or to give security upon or to affect property not yet in existence, or in the ownership of the party making the contract, or property to be acquired by him in the future, * * * does constitute an equitable lien upon the property so existing or acquired at a subsequent time, which is enforced in the same manner and against the same parties as a lien upon specific things existing and owned by the contracting party at the date of the contract."

Of this lien, in volume 5, § 105, he says:

"Receivers may be appointed in suits to enforce equitable liens under circumstances similar to those in which they may be appointed in foreclosing mortgages."

In *Knott v. Manufacturing Co.*, 30 W. Va. 794, 5 S. E. 268, the court said:

"The form or peculiar nature of the agreement which shall create a lien is not very material, for equity looks rather at the final intent and purpose than at the form; and if the intent appears to give, or to charge, or pledge property, real or personal, as security for an obligation, and the property is so described that the principal thing intended to be given or charged can be sufficiently identified, the lien follows. *Wayt v. Carwithen et al.*, 21 W. Va. 516."

*Samuel Pinch v. Ed. Anthony et al.*, 8 Allen (Mass.) 536, was a suit in equity to enforce an equitable lien on a certain tract of land. The bill in substance stated that plaintiff was a skilled miner and was induced by certain persons to leave his then employment for the purpose of conducting mining operations on certain other lands, describing them; that those persons, after executing to him a mortgage on the mineral rights in said lands for $1,500 for his services and moneys agreed to be paid him, conveyed the land to Samuel Coit, who, for a like consideration, executed to him another mortgage on said mineral rights for $5,000; that afterwards one Anthony purchased the premises for himself and other defendants, and, after receiving a deed therefor, entered into a certain agreement with plaintiff, in substance, that whereas said defendants were joint owners of said property, the title to which was in said Anthony, and whereas it was proposed to either sell said lands or to form a joint-stock company for the purpose of mining the same, and whereas said parties had agreed in consideration of services to be rendered by plaintiff that plaintiff shall have an interest in the proceeds of said land, or that the same shall be sold or if a joint-stock company shall be formed then that he shall have a certain amount of stock in the company; that therefore in consideration of said agreement it was agreed, among other things, between said parties and plaintiff that out of the

proceeds of said lands, if the same were sold, the sum of $6,500 should be paid plaintiff. The bill further alleges that plaintiff entered the service of said defendants, that mining operations on the land had been abandoned, and that he was entitled to a lien on the land in the sum of $6,500 and interest from date of the agreement, and asked that the land be sold and proceeds applied to the payment of his claim. On general demurrer the case was reserved for. the determination of the whole court. In passing, the court, in effect, held that the bill set out a case which clearly entitled plaintiff to equitable relief, and said:

"The rule is perfectly well settled that a party may by express agreement create a charge or claim in the nature of a lien on real as well as personal estate of which he is the owner or possessor, and that equity will establish and enforce such charge or claim, not only against the party who stipulated to give it* * *"— citing *Legard v. Hodges,* 1 Ves. Jr. 477; *Roundell v. Breary,* 2 Vern. 482; *Power v. Bailey,* 1 Ball & Beat. 49; *Gardner v. Townsend,* Coop. Eq. Cas. 303; *Wellesley v. Wellesley,* 4 Myl. & Cr. 561, and overruled the demurrer.

*Willetts et al. v. Brown et al.,* 42 Hun. (N. Y.) 140, was a suit to foreclose a lien. The trial court held the allegations of the complaint insufficient to constitute a cause of action, and dismissed the case. The complaint substantially states that plaintiffs were the owners of and had a right to operate and mine for oil on certain premises (describing them), and on another parcel were entitled to one-eighth of the oil which might be produced thereon by other parties as royalty; that they were in possession of the first tract, and had drilled five wells thereon which were productive and which had produced considerable oil; that there was connected therewith and used with developing the property engines, derricks, drills, and tanks for storing the oil; that by a certain instrument in writing filed with their complaint plaintiffs sold and transferred all their interest in said property, together with said machinery and in the royalty aforesaid, to defendant Kerwin, who agreed to pay therefor $32,000, all but $7,000 of

which had been paid; that Kerwin entered into possession, operated the wells, and produced large quantities of oil; that plaintiffs claimed a lien, among other things, on the oil which had been produced or which might be produced as security for the purchase money by virtue of the terms of said contract of sale, which, among other things, provided, after providing that all said machinery should remain on the premises until all payments were made, that:

"It is further agreed by and between the parties hereto that in case of failure on the part of said Kerwin to make the payments herein at the time they shall respectively fall due, for the period of ten days, then, after such failure to meet such payment, all oil produced upon the said premises shall thereafter be run into the lines to the credit of Isaac Willets as a security for such payments."

The court in passing, in effect, held that said stipulation in effect reserved to plaintiff an equitable lien on said oil as security for the debt, and reversed and remanded the cause with cost to abide the event; citing *Husted v. Ingram,* 75 N. Y. 251; *Hale v. Omaha Nat. Bank,* 49 N. Y. 626; 3 Pomeroy's Eqt. Juris. § 1235. See, also, 19 Am. & Eng. Ency. of L. 15, and cases there cited.

We are therefore of opinion that the stipulation in the mortgage under discussion reserved to plaintiff an equitable lien on 50 per cent. of the oil produced, or its proceeds as security for the mortgage debt, and, as plaintiff in addition thereto was entitled to a mortgage lien on the land to satisfy said debt, that the same may be enforced together in this action. And, as plaintiff was by virtue of said equitable lien jointly interested in the oil sought to be impounded, a receiver therefor was properly appointed on the first ground mentioned in Wilson's St. § 4441, which provides that the same may be done "in an action * * * between partners or others jointly owning or interested in any property or fund, on the application of plaintiff, or of any party whose right to or interest in the property or fund, or the proceeds thereof, is probable,

and where it is shown that the property or fund is in danger of being lost, removed or materially injured."

Finding no error in the action of the court in making the order and in refusing to set it aside when made, the judgment is affirmed.

All the Justices concur.