## SAVINGS BANK OF HARTFORD, Respondent, v. MUNDT, Appellant.

### (197 N. W. 156.)

(File No. 5174.   Opinion filed January 28, 1924.)

1.  **Liens—Equitable Mortgages—Whether Borrower Agreed to Give Bank Equitable Lien on His Personal Property to Secure Payment of Note Held for Jury.**

    In a bank's action against purchaser at borrower's auction sale for balance due bank on theory that the borrower gave the bank an equitable lien on his personal property to secure the payment of the loan, the question of whether the borrower

11—Vol. 47, S. D.

agreed to give the bank such a lien held a question for the jury.

2. **Liens—Knowledge—Whether Purchaser Knew that Seller Had Given Bank Equitable Lien at Time of Purchase Held for Jury.**

In bank's action against purchaser of borrower's personal property at auction sale for balance due on theory that the borrower gave the bank an equitable lien on his property to secure the payment of the loan, the question of whether the purchaser knew of borrower's agreement to give the bank a lien at the time he purchased the property held a question for the jury.

3. **Mortgages—Definitions—"Mortgage" Defined.**

Under Rev. Code 1919, Secs. 1549, 1556, relating to mortgages, a mortgage is a transfer of an interest in property.

4. **Liens—Equity—Equitable Lien May Be Created by Agreement of Parties.**

Rev. Code 1919, Secs. 1549, 1557, 1577, 1583, 1584, 1605, 1607, providing for the creation of mortgages and pledges, do not prohibit the creation of an equitable lien by agreement of the parties.

Appeal from Circuit Court, Minnehaha County; Hon. L. L. Fleeger, Judge.

Action by the Savings Bank of Hartford against John Mundt. A verdict was directed for the defendant, and, from an order granting a new trial, the defendant appeals. Affirmed.

*Bailey & Voorhees,* of Sioux Falls, for Appellant.

*Caldwell & Caldwell,* of Sioux Falls, for Respondent.

Respondent cited: Jones on Liens, Vol. 1, page 17; Aldine Co. v. Phillips (Ala.), 74 A. S. R. 387; Kelsay v. The Kelsay Land Co., 166 Pac. 173; Gardinier v. Planter's Nat. Bank (Tex.), 118 S. W. 1146; Carter v. Sapulpa Railway Co., 153 Pac. 853; Jackson v. Rutherford, 73 Ala. 155; Dufuer Oil Co. v. Enos, 117 Pac. 457; Charpie v. Stout, 128 Pac. 396; Rhinehart v. Victor Talking Machine, 261 Fed. 646; Hauselt v. Harrison, 105 U. S. 401; Smitton v. McCullough, 189 Pac. 686.

SHERWOOD, P. J. During the spring and summer of 1919, one Roy M. Donahoe borrowed of plaintiff bank about $6,500. He was at the time a renter on the farm of defendant and was also defendant's son-in-law. Donahoe owned all the horses, cattle,

and machinery on the farm. On November 26, 1919, Donahoe requested an additional loan from plaintiff bank of $1,500, and the evidence tended to show that, to obtain this loan, he represented to plaintiff that he had decided to quit farming and sell out; that plaintiff should have the sale and was to pay itself from the proceeds of the sale for the whole amount of money that Donahoe owed them, and he was sure there would be a great deal more than that; that he surely had stock enough on the place to assure plaintiff there would be ample money received from the sale of it to pay all he owed the plaintiff; that plaintiff told Donahoe he could not make the loan without Donahoe's giving assurance that the loan would be paid; and that Mr. Donahoe gave to plaintiff an itemized list of the different kinds of stock and machinery he had on the farm, showing the value of each article, the total amount of which list was something like $12,000. Donahoe then requested plaintiff to have the sale bills printed from the list of stock he furnished; to use their names as clerks of the sale; instructed them as to the auctioneer to use; and told plaintiff they were to collect all money from the proceeds of the sales and apply it on the notes. These statements are denied by Donahoe. On the strength of these representations, plaintiff claims it made the additional loan of $1,500; had the sale bills printed as directed, helped to circulate them; and the sale was held December 11, 1919.

At the sale all the property mentioned in Donahoe's itemized list to plaintiff was sold for a total sum of $8,639.74. But at the sale, a Waterloo Boy tractor was bid in by one C. J. Lynch for $756; certain cattle belonging to Donahoe were bid in by Ed Johnson for $2,376.50; and certain other cattle were bid in by defendant Mundt, for $258.

Lynch and Johnson refused to settle for the stuff they bought because they bid it in for Donahoe, under an agreement made with him. Mundt refused to settle for the cattle he bought because he claimed Donahoe owed him $12,000. The property bid in by Lynch and Johnson and the property bid off by Mundt were all a part of the property owned by Donhoe, listed by him to plaintiff, and advertised and sold at the sale. Mundt knew on the day of the sale, but after the sale had closed, that both Lynch and Johnson bid in the property for Donahoe.

All the property bid in and the property sold to Mundt was left on the farm where the sale was had, either in the possession of Donahoe or Mundt, and was never taken possession of by plaintiff bank. A few days after the sale, defendant Mundt claims to have bought from Donahoe the tractor bid in by Lynch, for $756, and the cattle bid in by Johnson for $2,376.50, all amounting to $3,132.50, and to have taken them from Donahoe at an agreed price of $3,500 which he credited to Donahoe on the amount then due him.

Owing to the refusal of "Lynch, Johnson, and Mundt" to pay plaintiff for the property bid off by them at the sale, plaintiff failed to collect $2,750.76 of the amount due it, although the amount bid for the property at the sale was more than sufficient to pay the entire debt due plaintiff.

Suit was brought against Mundt for the value of said property to the amount of the balance due plaintiff from Donahoe. At the close of the trial, the court directed a verdict against plaintiff. Thereafter plaintiff moved for a new trial. This motion was granted and defendant has appealed.

It is the contention of plaintiff (a) that his agreement with Donahoe at the time he loaned him the $1,500 gave plaintiff an equitable lien on Donahoe's personal property so listed with plaintiff and advertised for sale to the extent of plaintiff's debt; (b) that Mundt bought this property with full knowledge of all the facts concerning plaintiff's deal with Donahoe and his equitable lien on the property.

It is defendants' contention (a) that under the statutes of South Dakota, there can be no equitable lien in this state; (b) that even if there is an equitable lien, under the laws of this state, the agreement between Donahoe and plaintiff was too indefinite and uncertain to establish such a lien; (c) that if such a lien is to be recognized at all, it is of such a dangerous character, so susceptible to fraud, it should be hedged about with the greatest care, and that the facts in this case should not be held to sustain plaintiff's claim to a lien; (d) that, even if such lien is recognized, the evidence tended to show that Mundt took over the property by bill of sale before he had notice of plaintiff's claimed lien. On this point the evidence was conflicting. Donahoe placed the date of giving the bill of sale from a day or two after the

auction to two weeks thereafter. Mundt said, "I cannot tell just when that was given but will have to look it up."

Slechta said the conversation with Mundt in which he advised Mundt of the agreement between the bank and Donahoe was two or three days after the sale. Atkinson said it was probably within a week after the sale. Mundt admits a conversation with Slechta a few days after the sale, but says Slechta did not tell him of the arrangement between Donahoe and the bank and that the first he knew of the claimed equitable lien was when the suit was brought. He further said he was sure the bill of sale was given before his talk with Slechta.

[1, 2]   Therefore if the right to an equitable lien exists there were two questions of fact for the jury: (1) Whether Donahoe agreed to give such a lien; and (2) whether Mundt knew of the agreement before he purchased the property from Donahoe.

Under defendant's contention (a), he maintains that sections 1549, 1557, 1577, 1583, 1584, 1605, 1607, R. C. 1919, provided the only liens recognized under the laws of this state, and that such sections inferentially, if not expressly, prohibit the existence of any other lien. In this we think defendant is in error.

It will be noted that section 1549, R. C. 1919, provides:

"Every transfer of an interest in property, other than in trust, made only as a security for the performance of another act, is to be deemed a mortgage."

—while section 1556, R. C. 1919, provides:

"A mortgage is a lien upon everything that would pass by a grant of the property."

[3]   A mortgage, then, is a transfer of an interest in property under our statute. While concerning the lien plaintiff contends for, it is said:

"An equitable lien is not an estate or property in the thing itself nor a right to recover the thing—that is a right which may be the basis of a possessory action; it is neither a jus ad rem nor a jus in re. It is simply a right of a special nature over the thing, which constitutes a charge or incumbrance upon the thing." 3 Pomeroy's Equity Jurisprudence, § 1233.

Again the same author, in section 1234, says:

"It follows, therefore, that in a large class of executory con-
tracts, express and implied, which the law regards as creating no
property right, nor interest analogous to property, but only a mere
personal right and obligation, equity recognizes, in addition to the
personal obligation, a peculiar right over the thing, concerning
which the contract deals which it calls a 'lien,' and which, though
not property, is analogous to property, and by means of which the
plaintiff is enabled to follow the identical thing, and to enforce
the defendant's obligation by a remedy which operates directly
upon that thing."

In 25 Cyc. 1581, section A, it is said:

"The common-law lien is not abrogated by statutes giving a
lien"—citing Philipps v. Freyer, 80 Mich. 254, 45 N. W. 81;
Arians v. Brickley, 65 Wis. 26, 26 N. W. 188, 56 Am. Rep. 611.

Section 1549, R. C. 1919, is identical with section 2924, of the
Statutes of California, and with section 6727 of the Statutes of
N. D., and yet in both these states the courts have sustained and
applied the doctrine of equitable liens. Title Ins. Co. v. California
Development Co., 171 Cal. 173, 152 Pac. 559; Earle v. Land Co.,
150 Cal. 214, 88 Pac. 920; Daggett v. Rankin, 31 Cal. 322; Rem-
ington v. Higgins, 54 Cal. 620; Standorf v. Shockley, 16 N. D.
73, 111 N. W. 622, 11 L. R. A. (N. S.) 869. In other states
having statutes similar to our, equitable liens have been sustained.
Coram v. Davis, 209 Mass. 229, 95 N. E. 298; Westall v. Wood,
212 Mass. 540, 99 N. E. 325; Sibley v. Ross, 88 Mich. 315, 50
N. W. 379; Whitney v. Foster, 117 Mich. 643, 76 N. W. 114;
Piper v. Sawyer, 73 Minn. 332, 76 N. W. 57; Oil Co. v. Ran-
dolph, 25 Okl. 634, 110 Pac. 722; Carter v. Railroad Co., 49 Okl.
471, 153 Pac. 853; Kean v. Rogers (Iowa), 118 N. W. 515;
Tucker v. Ottenheimer, 46 Or. 585, 81 Pac. 360.

Mr. Pomeroy, in his Equity Jurisprudence, third edition, vol-
ume 3, § 1235, defines an equitable lien as follows:

"The doctrine may be stated in its most general form, that
every express executory agreement, in writing, whereby the con-
tracting party sufficiently indicates an intention to make some par-
ticular property, real or personal, or fund, therein described or
identified, a security for a debt or other obligation, or whereby the
party promises to convey or assign or transfer the property as
security creates an equitable lien upon the property so indicated,

which is enforceable against the property in the hands not only of the original contractor, but of his heirs, administrators, executors, voluntary assignees, and purchasers or incumbrancers with notice. Under like circumstances a mere verbal agreement may create a similar lien upon personal property."

In 25 Cyc., p. 662, equitable lien is defined as follows:

"An equitable lien is one which a court of equity recognizes as distinct from strictly legal rights, and is always ready to enforce regardless of what rights the appellant may have in a court of law. The term 'equitable lien' merely denotes a charge or incumbrance of one person upon the property of another. It is not a right of property in the subject-matter of the lien, nor a right of action therefor, nor does it depend upon possession; but is merely a right to have the property subjected to the payment of a debt or claim, and it applies as well to charges arising by express engagement of the owner of property as to a duty or intention implied on his part to make the property answerable for a specific debt or engagement."

See Kelsay v. Kelsay Land Co., 64 Okl. 291, 166 Pac. 173; Aldine Co. v. Phillips, 118 Mich. 162, 76 N. W. 371, 42 L. R. A. 531, 74 Am. St. Rep. 387; Gardinier v. Planters' National Bank, 54 Tex. Civ. App. 572, 118 S. W. 1146; Carter v. Sapulpa Railway Co., 49 Okl. 471, 153 Pac. 853; Earle v. Land Co., 150 Cal. 214, 88 Pac. 920, 925; Rhine hart v. Victor Talking Machine (D. C.), 261 Fed. 646; Smitton v. McCullough (Cal. Sup.), 189 Pac. 686.

[4] While the facts relied upon to sustain an equitable lien should always be proved by clear and convincing evidence, in view of these authorities, we hold there is no inhibition in our statute either direct or implied against what are termed equitable liens. Considering the evidence in this case, we do not think the trial court abused its discretion in granting a new trial.

The order of the lower court is affirmed.

Note.—Reported in 197 N. W. 156. See, Headnote, American Key-Numbered Digest, (1) Liens, Key-No. 15, 25 Cyc. 685 (1925 Anno.); (2) Liens, Key-No. 15, 25 Cyc. 685 (1925 Anno.); (3) Mortgages, Key-No. 1, 27 Cyc. 969; (4) Liens, Key-No. 7, 25 Cyc. 665.

On Rev. Code, 1919, Sec. 1549, see annotations Kerr's Cyc. Codes, 1920, Civ. Code, Sec. 2924.